**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re Application of<br>**ARIDA, LLC,**<br>**Earl Management LTD,**<br>**Finenergoinvest, LLC,**<br>**Alexey Grachev,**<br>　　　　　　**Applicants.** | **Civil Action No. 1:19-MC-00522** |

**MEMORANDUM OF LAW IN SUPPORT OF *EX PARTE* APPLICATION FOR AN
ORDER PURSUANT TO 28 U.S.C. § 1782 TO CONDUCT DISCOVERY
FOR USE IN FOREIGN PROCEEDINGS**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT .......................................................................................... 1

JURISDICTION AND  VENUE ......................................................................................... 2

APPLICANTS ..................................................................................................................... 2

FOREIGN PROCEEDINGS ............................................................................................... 3

REQUESTED DISCOVERY .............................................................................................. 4

FACTUAL BACKGROUND ............................................................................................... 4

    A.  Brio Ponzi Scheme .............................................................................................. 5

    B.  Discovery Sought in this District ....................................................................... 8

LEGAL ARGUMENT ........................................................................................................ 10

    A.  The Application Meets the Statutory Requirements of Section 1782 ................ 11

        1.  The Witnesses Are Found or Reside in This District ................................... 12

        2.  The Requested Discovery is Sought for Use in a Proceeding
            before a Foreign Tribunal ............................................................................ 13

        3.  Applicants Are Interested Persons ............................................................... 15

    B.  The Application Satisfies *Intel's* Discretionary Factors ...................................... 16

        1.  The Subjects of Discovery Do Not Participate in Foreign
            Proceedings ................................................................................................... 17

        2.  Applicants' Request for Relief Is Consistent with the Character
            and Nature of Foreign Proceedings and Russian Courts Are
            Receptive to U.S. Discovery ......................................................................... 18

        3.  This Application Is Not an Attempt to Circumvent Foreign Proof
            Gathering Restrictions or Other Policies  ..................................................... 19

        4.  The Discovery Requests Are Not Unduly Intrusive or
            Burdensome ................................................................................................... 20

    C.  No Service of the Application on Interested Parties Is Required ........................ 22

CONCLUSION ................................................................................................................... 22

# TABLE OF AUTHORITIES

**Supreme Court Cases**

*Intel Corp. v. Adv. Micro Devices, Inc.*,
542 U.S. 241 (2004) ............................................................... 2, 10, 11, 13-20, 22

**Federal Court Cases**

*Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.*,
785 F. Supp. 2d 434 (S.D.N.Y. 2011) ...................................................21

*Application of Joint Stock Co. Raiffeinsenbank*,
No. 16-MC-80203-MEJ, 2016 WL 6474224 (N.D. Cal. Nov. 2, 2016) ................... 14, 20, 21

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
673 F.3d 76 (2d Cir. 2012) ....................................................... 14, 16, 22

*Certain Funds, Accounts and/or Inv. Vehicles v. KPMG, LLP*,
798 F.3d 113 (2d Cir. 2015) ............................................................ 13

*Euromepa S.A. v. R. Esmerian, Inc.*,
51 F.3d 1095 (2d Cir. 1995)............................................................ 19

*Gushlak v. Gushlak*,
486 Fed.Appx. 215 (2d Cir. 2012) ...................................................... 22

*In re Application of Auto-Guadeloupe Investissement S.A.*,
No. 12 MC 221 RPP, 2012 WL 4841945 (S.D.N.Y. Oct. 10, 2012)......................18

*In re Application of Chevron Corp.*,
709 F. Supp. 2d 283 (S.D.N.Y. May 20, 2010) ......................................... 20

*In re Application of Gianoli Aldunate*,
3 F.3d 54 (2d Cir. 1993) ............................................................. 11

*In re Application of Hill*,
2005 WL 1330769 (S.D.N.Y. June 3, 2005) ............................................. 21

*In re Application of Hornbeam Corp.*,
No. 14 MISC. 424, 2014 WL 8775453 (S.D.N.Y. Dec. 24, 2014) ........................ 12

*In re Application of MTS Bank*,
No. 17-21545-MC, 2017 WL 3276879 (S.D. Fla. Aug. 1, 2017) ......................... 21

*In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by*
*Affiliates of Fortress Inv. Grp. LLC*,
No. 14 CIV. 1801 NRB, 2014 WL 3404955 (S.D.N.Y. July 9, 2014) ....................12

*In re Clerici*,
    481 F.3d 1324 (11th Cir. 2007) ................................................................ 20

*In re del Valle Ruiz*,
    939 F.3d 520 (2d Cir. 2019) ............................................................... 12, 13

*In re Edelman*,
    295 F.3d 171 (2d Cir. 2002)....................................................................13

*In re Furstenberg Fin. SAS*,
    No. 18-MC-44 (JGK), 2018 WL 3392882 (S.D.N.Y. July 12, 2018) ................. 17

*In re Gemeinshcaftspraxis*,
    No. Civ. M19–88 (BSJ), 2006 WL 3844464 (S.D.N.Y. Dec. 29, 2006) ...............12

*In re Gushlak*,
    No. 11-MC-218 (NGG), 2012 WL 1514824 (E.D.N.Y. Apr. 30, 2012) ............... 22

*In re Imanagement Servs., Ltd.*,
    2005 WL 1959702 (E.D.N.Y. Aug. 16, 2005) ............................................. 19

*In re Kreke Immobilien KG*,
    2013 WL 5966916 (S.D.N.Y. Nov. 8, 2013) ............................................... 18

*In re Malev Hungarian Airlines*,
    964 F.2d 97 (2d Cir. 1992)....................................................................11

*In re Minatec Fin. S.A.R.L.*,
    2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008) ........................................... 19

*In re MTS Bank*,
    No. 17-21545-MC, 2017 WL 3155362 (S.D. Fla. July 25, 2017) ................. 14, 18

*In re MTS Bank*,
    No. 17-21545-MC, 2018 WL 3145806 (S.D. Fla. June 27, 2018) ............ 3, 14, 19

*In re O'Keeffe*,
    650 Fed. App'x 83 (2d Cir. 2016).............................................................17

*In re Republic of Kazakhstan*,
    110 F. Supp. 3d 512 (S.D.N.Y. 2015) ...................................................... 12

*In re Servicio Pan Americano de Proteccion*,
    354 F. Supp. 2d 269 (S.D.N.Y. 2004) ...................................................... 18

*Matter of Lancaster Factoring Co., Limited*,
    90 F.3d 38 (2d Cir. 1996) .............................................................. 11, 14

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ......................................................... 13, 14, 16

*Metallgesellschaft v. Hodapp*,
    121 F.3d 77 (2d Cir. 1997) ......................................................................... 16

*Schmitz v. Bernstein Liebhard & Lifshitz LLP*,
    376 F.3d 79 (2d Cir. 2004) ......................................................................... 11

**United States Code**

28 U.S.C. § 1782 ...................................................................................1-3, 10-23

**Rules**

Federal Rules of Civil Procedure 26 ............................................................ 1

Federal Rules of Civil Procedure 30 ............................................................ 1

Federal Rules of Civil Procedure 45 ............................................................ 1

Applicants ARIDA, LLC, Earl Management LTD, Finenergoinvest, LLC, and Alexey Grachev (collectively, "Applicants"), by and through the undersigned counsel, Anna V. Brown, Esq. and Timur Zubaydullin, Esq. of Brown Legal Consulting, LLC, hereby apply for an Order pursuant to 28 U.S.C. § 1782 and Rules 26, 30, and 45 of the Federal Rules of Civil Procedure, granting Applicants leave to serve subpoenas for testimony and production of documents on the persons and corporate entities found within the Southern District of New York, for use in foreign proceedings pending in Russia[1] and in contemplated civil actions for fraud, civil money laundering, conversion and other claims in Russia and other jurisdictions, as described below.

## PRELIMINARY STATEMENT

This 28 U.S.C. § 1782 ("Section 1782") Application and the foreign proceedings pending in Russia pertain to a multimillion-dollar Ponzi scheme perpetrated by Vladislav ("Vlad") Mishin through Russian financial companies Brio Invest and Microcredit Company Brio Finance, LLC ("Brio Finance") and with the assistance of other persons. Applicants, foreign companies and a Russian national, are victims of this fraud. Applicants filed claims for damages in civil and bankruptcy cases to seek recovery of the stolen funds and also initiated criminal proceedings in Russia. In this district they are seeking discovery from persons having personal knowledge of

---

[1] The foreign proceedings are pending civil and bankruptcy actions in Moscow Commercial Court, Russia: *Bankruptcy of Brio Finance*, Case No. A40-141847/2019-184-156; *Bankruptcy of Brio Invest*, Case No. A40-161382/2019; *Bankruptcy of Vladislav Mishin*, Case No. A41-49412/2019; *Earl Management LTD v. Brio Finance*, Case No. A40-51699/19-182-452; and pending criminal case *Russian Federation v. Vladislav Mishin*, Moscow Regional Department of the Ministry of Internal Affairs Criminal Case No. 119014225000156. Applicants ARIDA, Alexey Grachev and FEI are also plaintiffs in other civil proceedings, in which Khoroshevsky District Court in Moscow, Russia, entered default judgments: *ARIDA, LLC v. Brio Finance*, Case No. 2-2630/19; *Alexey Grachev v. Brio Invest*, *Vladislav Mishin*, Case No. 02-1896/2019; and *Finenergoinvest, LLC, v. Brio Finance*, Case No. 2-2710/19.

1

the scheme and also discovery from New York corporate entities and New York banks on the disposition of the funds.

Applicants satisfy Section 1782's three statutory requirements: (1) based on publicly available information and reasonable belief, the witnesses are "found" and/or "reside" in this district; (2) the discovery is for use in the judicial proceedings pending in Russia; and (3) Applicants are "parties" and/or "interested persons" in those proceedings. Additionally, the discretionary factors set forth in *Intel Corp. v. Adv. Micro Devices, Inc.*, 542 U.S. 241 (2004) strongly support granting this Application because: (1) all witnesses are not within the jurisdiction of the Russian courts; (2) the character and nature of the proceedings in Russia are consistent with the relief sought by Applicants, and Russian courts are receptive to judicial assistance from the United States; (3) this application does not seek to circumvent any proof gathering restrictions and is consistent with the policy of the United States favoring discovery to investigate fraud; and (4) the discovery is relevant and narrowly tailored to the issues in the underlying Russian proceedings.

## JURISDICTION AND VENUE

Jurisdiction is proper pursuant to 28 U.S.C. § 1782, as this Application is for testimony and documents to assist Applicants in foreign court proceedings. Venue is appropriate pursuant to 28 U.S.C. § 1782 because the discovery is sought from corporations and persons residing or found in the Southern District of New York.

## APPLICANTS

Applicant ARIDA, LLC ("ARIDA") is a company registered in Moscow, Russia. Applicant Earl Management LTD (f/k/a Fairway Investments Overseas Limited) ("Earl Management") is a company incorporated in the Republic of Cyprus and doing business in

Russia.  Applicant Finenergoinvest, LLC ("FEI") is a company registered in Moscow, Russia.

Applicant Alexey Grachev is a Russian national.  This Application is a joint[2] application of

"interested persons" within the meaning of 28 U.S.C. § 1782, who share common litigation

interests.

## FOREIGN PROCEEDINGS

Applicants are parties and/or interested persons in the following foreign proceedings

currently pending in Russia:

### Bankruptcy Cases

(i)  *Bankruptcy of Brio Finance*, Case No. A40-141847/2019-184-156, Moscow Commercial
Court, Russia;

(ii)  *Bankruptcy of Brio Invest*, Case No. A40-161382/2019, Moscow Commercial Court,
Russia;

(iii)  *Bankruptcy of Vladislav Mishin*, Case No. A41-49412/2019, Moscow Commercial Court,
Russia;

### Civil Case[3]

(iv)  *Earl Management LTD v. Brio Finance*, Case No. A40-51699/19-182-452, Moscow
Commercial Court, Russia;

### Criminal Case

(v)  *Russian Federation v. Vladislav Mishin*, Moscow Regional Department of the Ministry of
Internal Affairs Criminal Case No. 119014225000156.

---

[2] Joinder of several applicants for joint discovery is appropriate in 28 U.S.C. § 1782 actions. *See, e.g., In re MTS Bank*, No. 17-21545-MC, 2018 WL 3145806 (S.D. Fla. June 27, 2018) (joining additional party-applicant in Section 1782 discovery action).

[3] Applicants ARIDA, Alexey Grachev and FEI are also plaintiffs in other civil proceedings: *ARIDA, LLC v. Brio Finance*, Case No. 2-2630/19, Khoroshevsky District Court, Russia; *Alexey Grachev v. Brio Invest*, *Vladislav Mishin*, Case No. 02-1896/2019, Khoroshevsky District Court, Moscow, Russia; *Finenergoinvest, LLC*, *v. Brio Finance*, Case No. 2-2710/19, Khoroshevsky District Court, Moscow, Russia.  The Russian courts have issued default judgments for ARIDA, FEN and Alexey Grachev in those cases; however, the judgements may be reopened if any defendant enters the appearance.

Applicants are also contemplating filing a civil action for fraud, civil money laundering, conversion and other claims, as described herein.

## REQUESTED DISCOVERY

Applicants are seeking to obtain documents from and to depose the following persons and corporate entities, which, upon information and belief, are residing and/or are found in the Southern District of New York (collectively, "Respondents"):

   (i)    Daniel Mishin;

   (ii)   Vladislav Mishin;

   (iii)  Boris Korol;

   (iv)   June Homes US, Inc., a/k/a Rezidenz, Inc., a Delaware company registered to do business in the State of New York, DOS ID No. 5276186, and maintaining a place of business in this district;

   (v)   June NY, LLC, a/k/a Residenz, LLC, a Delaware company registered to do business in the State of New York, DOS ID No. 5279764, and maintaining a place of business in this district;

   (vi)   June NY 1, LLC, a/k/a Residenz 1, LLC, a Delaware company registered to do business in the State of New York, DOS ID No. 5379205, and maintaining a place of business in this district; and

   (vii)  Bank of America, Chase Bank, Citibank, TD Bank and Bank of New York Mellon located within this district ("New York Banks").

## FACTUAL BACKGROUND

The facts giving rise to this Application and the Russian proceedings are set forth in detail in the Declarations of Alexey Grachev ("AG Decl."), Evgeniy Elizarov ("EE Decl."), Vasily Sidorov ("VS Decl."), Dmitriy Ponomarev ("DP Decl.") and Arsen Navasardyan ("AN Decl."), and the Exhibits thereto, and the Exhibits attached to the Declaration of Anna V. Brown, Esq.

("Brown Decl."),  all of which are submitted in support of this Application and are summarized herein.

## A.      **Brio Ponzi Scheme**

For several years before he fled Russia in early 2019, Russian businessman Vlad Mishin presented himself as a prominent businessman in the area of financing corporate vendors bidding for contracts in electronic auctions in Russia.  AN Decl. ¶42; AG Decl. ¶¶4,6; EE Decl. ¶¶5-6; VS Decl. ¶6; DP Decl. ¶¶6-7.  He operated two companies Brio Finance and Brio Invest (collectively, "Brio").  AN Decl. ¶30.  Brio was marketed as a financial company specializing in short-term lending to private businesses participating in the tender process for projects or procurement for large corporations and state/municipal entities.  AN Decl. ¶34.

According to the Russian law, any vendor who wishes to participate in a tender to win a contract for the supply of goods, works or services must provide a deposit by wire to the auction's escrow account or a bank guarantee to prove its good faith intentions to perform under the contract.  AN Decl. ¶¶35-37.  The amount of such deposit is set by the ordering customer who places the request for procurement and is usually 5% of the contract price.  *Id*.  After the end of the auction, the auction holder returns non-winning bidders' deposits to their originating accounts.  *Id*.  The winning bidder's deposit is wired to the ordering party to be held as security until the contract is performed.  *Id*.  It is common practice for bidders to borrow money from third parties to participate in an auction and then return the loan at the end of the contracting process.  AN Decl. ¶¶37-40.

Brio presented itself an intermediary financier, which borrowed funds from third-party lenders and issued smaller short-term loans to bidders.  AN Decl. ¶41.  Russian banks usually cannot process loan applications within the short time frames of a typical online auction and

generally tend to deny short-term small business financing; thus, Vlad Mishin advertised Brio as a profitable niche business in high demand.  EE Decl. ¶9; VS Decl. ¶¶6-7; DP Decl. ¶6.  Brio's business model was to borrow money from other lenders, and then charge bidders high interest rates for short-term loans.  AG Decl. ¶6; EE Decl. ¶10; VS Decl. ¶¶7-8; DP Decl. ¶6.

According to Brio, the lending was risk-free for the investors because borrowed funds would never actually be released to auction bidders.  EE Decl. ¶9; VS Decl. ¶8; DP Decl. ¶8.  In accordance with Russian law, bid bonds are kept in escrow accounts and only used as a guarantee in the bidding process.  AN Decl. ¶37.  Brio's business model looked very attractive to Applicants and other investors: Brio could provide over 20% per annum on Russian ruble investments with little to no risk and no time-consuming interactions with the bidders.  DP Decl. ¶6.  Brio's employees and agents, such as Ekaterina Tronina and Boris Korol, led an extensive marketing campaign to convince corporate and individual lenders to invest in this business.  EE Decl. ¶5; VS Decl. ¶¶5-6; DP Decl. ¶6.

All Applicants in this case issued loans to Brio in 2016-2018 for auction financing.[4]  AG Decl. ¶7; EE Decl. ¶13, ¶20, ¶¶22-24; VS Decl. ¶¶9-10, ¶14; DP Decl. ¶9, ¶¶11-12.  As they found out later, Vlad Mishin and Brio operated a Ponzi scheme, borrowing more and more money from investors and paying interest on the earlier loans from the subsequently borrowed funds.  AN Decl. ¶¶31-32, ¶¶45-46.  The perpetrators used a "bait-and-switch" swindle, where the initial loans were returned with high interest for the sole purpose of attracting additional investment, only to be stolen and dissipated by the time this Ponzi scheme collapsed.  AN Decl. ¶44.  Brio could maintain the illusion of a sustainable business as long as new lenders issued new loans to it, and as long as most of the lenders did not demand full repayment and continued to believe in

---

[4] The details of their loan agreements, financing transactions, and interactions with Vlad Mishin and Brio are fully described in the Applicants' Declarations attached hereto.

its alleged on-going business activity.  AN Decl. ¶¶45-46.   To maintain this illusion, Brio employees falsified daily and weekly reports on the alleged loans issued to the bidders using publicly available bidders' information.  AG Decl. ¶8; EE Decl. ¶¶14-15; VS Decl. ¶¶11-12. The reports listed names of real auction participants; however, no loans were actually issued to them by Brio.  EE Decl. ¶15.

Unbeknownst to the victims, Vlad Mishin had no intention to engage in auction lending, and all his activities were aimed at money laundering and siphoning funds out of Brio through creative corporate structuring and financial dealings. AN Decl. ¶45. The company's business operations were a sham. AN Decl. ¶45.  The perpetrators used a variety of methods to convert and to launder the funds: they issued fictitious loans and then assigned loans, paid for fictitious projects, falsified bills, opened investment fund accounts, paid fake contractors, used crypto-currency, etc.  AN Decl. ¶49. The funds were also transferred through small regional banks over a period of two or three years preceding the collapse of the Ponzi scheme. AN Decl. ¶49.  The perpetrators acted in concert to achieve a common goal of draining as much money out of the lenders as they could before the scheme could no longer be sustained.  AN Decl. ¶47.

On December 28, 2018, Vlad Mishin stopped responding to phone calls.  EE Decl. ¶25. The office of Brio Finance never became operational after the Russian New Year's and Christmas holiday break.  EE Decl. ¶25.  Further investigation revealed that Brio did not have any funds in its accounts.  EE Decl. ¶26.  Moreover, in 2017-2018 Brio did not engage in any legitimate business activities.  AN Decl. ¶45.  The company did not issue any auction loans; instead, it used most recent investors' funds to pay interest on the prior loans, with the rest of the funds siphoned out of the company through sham entities and creative financial structuring.  *Id*. All

of Brio's accounting and financial reporting was a sham. *Id*.  The total amount of funds stolen

from Applicants exceeds six million U.S. dollars[5].

In 2019, Applicants initiated bankruptcy proceedings against Vlad Mishin and Brio in

Russia, filed the civil cases listed above and a criminal case in Moscow Regional Department of

the Ministry of Internal Affairs.  AN Decl. ¶¶25-29.  They also contemplate filing a civil action for

fraud, civil money laundering, conversion and other claims against Vlad Mishin and Brio and their

employees, affiliated and related entities, aiders, abettors, and co-conspirators.

**B.**     **Discovery Sought in this District**

Approximately two years prior to Vlad Mishin's flight from Russia, his brother Daniel

Mishin founded June Homes, a new business venture in New York.  *See* public sources cited

*infra*.  On information and belief, June Homes is a group of companies that includes at least three

Delaware business entities that are registered to do business in New York: June Homes US, Inc.,

a/k/a Rezidenz, Inc.; June NY, LLC, a/k/a Residenz, LLC; and June NY 1, LLC, a/k/a Residenz

1, LLC.  Brown Decl. Ex. 12-14.  June Homes' headquarters are located at 315 West 36th Street,

Floor 8, New York, NY 10018.  Brown Decl. ¶13.

According the information on the corporate website https://junehomes.com, "June is a

network of fully furnished bedrooms in prime spots available on flexible month-to-month terms

in major American cities."

*See also* https://pitchbook.com/profiles/company/235281-88:

---

[5] The calculation is based on the rate provided by an online currency conversion calculator at
https://www.xe.com/currencyconverter/convert/?Amount=1&From=USD&To=RUB.   Based on
the Russian court documents, Earl Management's damages are 238,000,000 rubles, <u>AN Decl. Ex.
11</u>; Finenergoinvest's damages are 63,690,520.55 rubles plus interest and fees, <u>AN Decl. Ex. 15</u>;
ARIDA's damages are $1,084,119.34 plus fees, <u>AN Decl. Ex. 9</u>; Alexey Grachev's damages are
42,420,006.50 rubles plus fees, <u>AN Decl. Ex.12</u>.

Developer of an online shared living platform designed for the housing industry. The company's platform offers luxury private rooms in prime locations at reasonable prices with 30-days minimum stay and no broker fees, enabling apartment hunters to seek for cost-effective living options in a convenient and hassle-free manner.

Daniel Mishin publicly presents himself as the founder and the principal of June Homes,

who should have information on the source of funding of this business:

See https://www.entrepreneur.com/article/317719:

On a recent sun-drenched spring afternoon, Daniel Mishin is strolling through the townhouse in Manhattan's West Village where he lives, works and, if time allows, plays. It reeks of Manhattan real estate envy -- lofty ceilings, wooden staircases, gleaming appliances, capped off with a roof deck and a back porch. Trees line the street, where the Waverly Inn peeks through from the view on the front stoop. Most enviable is the price tag: Residents here pay $1,900 a month per private room, roughly 20 to 40 percent below the area average for a shared apartment -- but the price includes cleaning services, security deposit, internet, utilities and even some toiletries (among them a very lovely hand soap).… His neighbors know they have Mishin to thank for the living arrangement. It's the product of his company, Residenz, which aims to create affordable urban housing for young professionals.

In or around April 2018, Daniel Mishin enlisted the help of an immigration attorney to

obtain a tourist and then an immigration visa for his brother Vlad Mishin.  AN Decl. ¶53.  The

brothers maintained close business relations.  AN Decl. 54-56.  Vlad Mishin was involved in

fundraising for June Homes in Russia, and Daniel Mishin assisted in searching for a buyer of a

real property that belonged to Brio shortly prior to its collapse.  AN Decl. Ex. 18-21.  The

discovery obtained in Russia also revealed joint ownership of certain Russian companies by the

Mishin brothers.  AN ¶55.  Vlad Mishin fled Russia in late 2018 or early 2019.  AN Decl. ¶53.

He had previously voiced his intention to move to the U.S to do business with his brother Daniel

Mishin.  AN Decl. ¶54; DP Decl. ¶14.  He has not filed his appearance in any of the pending

Russian cases.  AN Decl. ¶¶23-29. According to documents revealed in discovery in Russia,

prior to his flight from Russia Vlad Mishin transferred funds that had been borrowed by Brio

directly or indirectly to the accounts of corporate entities and his trusted representatives.    AN Decl. ¶¶48-49.    Applicants reasonably believe that the borrowed funds ultimately found their way into the United States and were used, in part, to fund other business ventures.    AN Decl. ¶¶54-57.

Applicants reasonably believe that both Vlad Mishin and Daniel Mishin have information on the dissipation of Applicants' funds and bankruptcy estate property.    That information is relevant to Applicants' defrauded creditor claims in all Russian cases.    In light of the evidence of joint business activities of Vlad Mishin and Daniel Mishin in Russia, Applicants further seek discovery in the U.S. on the source of funding of June Homes.    An additional person subject to discovery in this case is Boris Korol, who, acting in concert with Vlad Mishin, induced some of the Applicants to lend funds to Brio.    VS Decl. ¶¶4-7; DP Decl. ¶6; AN Decl. ¶58.    Mr. Korol also had a 10% share interest in Brio Finance.    AN Decl. ¶58. Applicants further believe that serving subpoenas on identified New York banks on accounts of known business associates of Vlad Mishin would reveal financial information relevant to these pending cases and tracing the embezzled funds.

## LEGAL ARGUMENT

28 U.S.C. §1782(a) provides in relevant part (emphasis added):

> The district court of *the district in which a person resides or is found* may order him to give his testimony or statement or to produce a document or other thing *for use in a proceeding in a foreign or international tribunal*, including criminal investigations conducted before formal accusation. The order may be made pursuant to a letter rogatory issued, or request made, by a foreign or international tribunal or upon the application of any *interested person* and may direct that the testimony or statement be given, or the document or other thing be produced, before a person appointed by the court.

The purpose of Section 1782 is "to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 247

(2004); *see also In the Matter of Lancaster Factoring Co., Limited*, 90 F.3d 38, 41 (2d Cir. 1996) (finding that the purposes of Section 1782 are "to provide equitable and efficacious procedures in United States courts for the benefit of tribunals and litigants involved in foreign litigation" and "to encourag[e] foreign countries by example to provide similar assistance to our courts") (internal citations omitted).[6] The statute "is the product of congressional efforts, over the span of nearly 150 years, to provide federal-court assistance in gathering evidence for use in foreign tribunals." *Id*. at 248.

The threshold requirements of Section 1782 are the following: (1) the persons from whom discovery is sought must reside in or be found in this district; (2) the discovery must be for use in a proceeding in a foreign tribunal; and (3) the applicant must be an "interested person." 28 U.S.C. 1782; *Intel Corp*., 542 U.S. 241. "Once the statutory requirements are met, a district court is free to grant discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz LLP*, 376 F.3d 79, 83-84 (2d Cir. 2004).

## A.     The Application Meets the Statutory Requirements of Section 1782

Applicants meet all of the statutory requirements of Section 1782: (1) the persons from whom discovery is sought reside in or are found in this district; (2) the discovery is for use in a proceeding in a foreign tribunal; and (3) the applicants are "interested persons." 28 U.S.C. § 1782; *Intel*, 542 U.S. 241.

---

[6] *See also In re Application of Gianoli Aldunate*, 3 F.3d 54, 57 (2d Cir. 1993) (stating Congress enacted and amended Section 1782 to "liberalize existing U.S. procedures for assisting foreign and international tribunals in obtaining oral and documentary evidence in the United States" and to "provid[e] efficient means of assistance to participants in international litigation in our federal courts and encourag[e] foreign countries by example to provide similar means of assistance to our courts") (citing S. Rep. No. 1580, 88th Cong., 2nd Sess. (1964), *reprinted in* 1964 U.S. Code Cong. & Admin. News 3782, 3788; *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992)).

1.      **The Witnesses Are Found or Reside in This District**

A federal court's power to compel discovery extends to any "persons" (both individuals and legal entities) who (i) reside in or (ii) are found in the district over which the court presides. 28 U.S.C. § 1782(a).  "§ 1782's 'resides or is found' language extends to the limits of personal jurisdiction consistent with due process." *In re del Valle Ruiz*, 939 F.3d 520, 528 (2d Cir. 2019). A company is found where it is incorporated, headquartered, or engages in "systematic and continuous" activities.  *In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp. LLC*, No. 14 CIV. 1801 NRB, 2014 WL 3404955, at *1 (S.D.N.Y. July 9, 2014) (domestic discovery targets had "their corporate offices and principal place of business in Manhattan, so they are naturally 'found' in the Southern District of New York") (citing *In Re Gemeinshcaftspraxis,* No. Civ. M19–88 (BSJ), 2006 WL 3844464, at *4 (S.D.N.Y. Dec. 29, 2006) (when a corporation "maintains its headquarters in New York, [it is] thus is [sic] 'found' within this district for purposes of Section 1782")); *In re Application of Hornbeam Corp.,* No. 14 MISC. 424, 2014 WL 8775453, at *3 (S.D.N.Y. Dec. 24, 2014) (finding New York banks were "found" in this district for purposes of § 1782); *In re Republic of Kazakhstan*, 110 F. Supp. 3d 512, 515 (S.D.N.Y. 2015) (a business is "found" in a given district if it would be subject to personal jurisdiction in that district by virtue of its systematic and continuous activities there, even if its place of incorporation or headquarters is outside the district).

June Homes is headquartered and maintains a place of business in this district.  Brown Decl. ¶13, Ex. 12-14.  Each of the New York Banks maintains a branch office in this district. Brown Decl. ¶16.  Daniel Mishin resides and works in this district.  Brown Decl. ¶¶13-14.  Based on the information revealed in discovery in the Russian cases, Applicants reasonably believe that Vlad Mishin is found and can be served at his brother's residential address in this district.  AN Decl.

¶¶53-54.  Boris Korol maintains a residential address in Brooklyn, New York.  Brown Decl. ¶15.

However, based on the previous experience meeting him in this district, Applicants reasonably

believe that he is found and can also be served in this district.  VS Decl. ¶4.  Consistent with "tag

jurisdiction"[7], Vlad Mishin and Boris Korol are subject to the jurisdiction of this court.

Accordingly, the witnesses in this case are found or reside within this district, satisfying

the first statutory requirement of § 1782.

### 2. The Requested Discovery is Sought for Use in a Proceeding before a Foreign Tribunal

Discovery may be ordered "for use in a proceeding in a foreign or international tribunal,

including criminal investigations conducted before formal accusation."  28 U.S.C. § 1782(a).  The

term "tribunal" includes investigative, administrative, arbitral, and quasi-judicial bodies or any

"first-instance decisionmaker." *Intel*, 542 U.S. at 258.  Even where the foreign proceeding has not

been filed, this "for use" requirement is still satisfied if the foreign proceeding is within

"reasonable contemplation." *Id.* at 259 (foreign proceeding need not be "pending" or "imminent").

To meet this "reasonable contemplation" standard, a petitioner "must provide some objective

indicium that the action is being contemplated…  At a minimum, a § 1782 applicant must present

to the district court some concrete basis from which it can determine that the contemplated

proceeding is more than just a twinkle in counsel's eye."  *Certain Funds, Accounts and/or Inv.*

*Vehicles v. KPMG, LLP*, 798 F.3d 113, 123-24 (2d Cir. 2015).  The statutory phrase "for use" is

broadly defined to include anything "that will be employed with some advantage or serve some

use in the proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015).  To be discoverable

---

[7] *In re del Valle Ruiz*, 939 F.3d 520, 527 (2d Cir. 2019) ("'Given that this so-called tag jurisdiction is consistent with due process,' we reasoned, 'we do not think that § 1782(a), which is simply a discovery mechanism and does not subject a person to liability, requires more.'") (citing *In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002)).

under the statute, the evidence does not need to be admissible or even discoverable in the foreign tribunal. *Intel*, 542 U.S. at 260; *Mees*, 793 F.3d at 302; *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 81-82 (2d Cir. 2012).

First, the Russian courts where bankruptcy and civil cases against Vlad Mishin and Brio are currently pending are "foreign tribunals" within the statutory definition of Section 1782. *See, e.g., In re MTS Bank*, No. 17-21545-MC, 2018 WL 3145806, at *8 (S.D. Fla. June 27, 2018) ("There are also several cases where courts have found Russian bankruptcies to fall within the scope of § 1782.... 'A bankruptcy proceeding, by its nature, is one in which the value of the debtor's estate is adjudicated. Such a proceeding is within the intended scope of § 1782.'") (citing *Lancaster Factoring Co.*, 90 F.3d at 42); *In re MTS Bank,* No. 17-21545-MC, 2017 WL 3155362, at *3 (S.D. Fla. July 25, 2017) ("The evidence is sought for the use in a Russian bankruptcy court, which is obviously a foreign tribunal within the statutory definition of § 1782."); *In re: Application of Joint Stock Co. Raiffeinsenbank*, No. 16-MC-80203-MEJ, 2016 WL 6474224, at *3 (N.D. Cal. Nov. 2, 2016) (same).

Second, Applicants also seek to use the requested discovery in the pending criminal investigation against Vlad Mishin and his co-conspirators, conducted by the Moscow Regional Department of the Ministry of Internal Affairs. The Ministry of Internal Affairs is an official investigative body of the Russian Federation, which has discretion to issue an indictment that is ultimately submitted to the court. AN Decl. ¶12. Moscow Regional Department of the Ministry of Internal Affairs is therefore a "first-instance decisionmaker" and a foreign tribunal under the statute. *See Intel*, 542 U.S. at 257-58 (finding a commission overseeing "investigative stage" a "tribunal" under Section 1782).

14

Finally, the evidence is also sought for use in contemplated actions in Russia and other foreign jurisdictions for fraud, civil money laundering, conversion and other claims by Applicants against Vlad Mishin and Brio and their employees and co-conspirators.  Applicants believe that the crime was perpetrated by an organized group of individuals and the funds were transferred to other countries.  Obtaining bank documents recording money transfers to Vlad Mishin's suspected shell companies and trusted individuals and other records would assist in uncovering the suspects' information and proving Applicants' claims.  The proceedings are "within reasonable contemplation" following discovery.

### 3.    Applicants Are Interested Persons

The term "interested person" under Section 1782 includes any person, including non-litigants, who "merely possess a reasonable interest in obtaining" the judicial assistance contemplated by the statute.  *Intel*, 542 U.S. at 257 (internal quotation marks omitted).  A Section 1782 applicant is an interested person if he or she has "participation rights" in relevant proceedings.  *Id.*, at 256 (noting that "litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782"); *see also Certain Fund*s, 798 F.3d at 119 (observing that *Intel* did not establish a minimum threshold for identifying an interested person, but criteria may include "an established right to provide evidence and have the party consider it," "a recognized relationship, such as that of an agent and principal," or "certain procedural rights" afforded to a creditor).

Applicants qualify as "interested persons" for the following reasons: (i) ARIDA is a party in *Bankruptcy of Brio Finance*; (ii) Earl Management is a party in civil case *Earl Management LTD v. Brio Finance, et al.*; (iii) Alexey Grachev is a party in *Bankruptcy of Brio Invest*, *Bankruptcy of Vlad Mishin*; (iv) all Applicants are victims with broad participation rights in the

criminal case *Russian Federation v. Vladislav Mishin*; (v) all Applicants share common litigation interests and intend to file a collective civil action arising out of the same facts for fraud, civil money laundering, conversion and other claims against Vlad Mishin, Brio, and/or their employees, affiliated and related entities, aiders, abettors, co-conspirators, and other perpetrators.[8]

Clearly, all Applicants possess a reasonable interest in obtaining judicial assistance here. Thus, Applicants are "interested persons" for purposes of 28 U.S.C. § 1782, satisfying the third and final statutory requirement.

**B.    The Application Satisfies *Intel's* Discretionary Factors**

The U.S. Supreme Court has interpreted Section 1782 as having a broad application. *Intel*, 542 U.S. at 259.   Where, as here, the statutory requirements are satisfied, Section 1782 vests the Court with the discretion to grant the requested discovery.  *Id.*   However, this discretion must be exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Mees*, 793 F.3d at 297-298 (internal quotation marks omitted). "In pursuit of these twin goals, the statute has, over the years, been given increasingly broad applicability." *Brandi-Dohrn*, 673 F.3d at 80.  The Second Circuit has held that it is an abuse of discretion to deny a Section 1782 application if the denial is contrary to the statute's twin aims.  *See, e.g., Metallgesellschafi v. Hodapp*, 121 F.3d 77, 79-80

---

[8] Applicants ARIDA, Alexey Grachev and FEI are also plaintiffs in other civil proceedings: *ARIDA, LLC v. Brio Finance*, Case No. 2-2630/19, Khoroshevsky District Court, Russia; *Alexey Grachev v. Brio Invest*, *Vladislav Mishin*, Case No. 02-1896/2019, Khoroshevsky District Court, Moscow, Russia; *Finenergoinvest, LLC, v. Brio Finance*, Case No. 2-2710/19, Khoroshevsky District Court, Moscow, Russia.  The Russian courts have issued default judgments for the Applicants in those cases; however, the judgments may be reopened if any defendant enters the appearance.

(2d Cir. 1997) (vacating order denying application where "district court did not advert to these objectives, explicitly or implicitly, and in fact the reasons the court did give were at odds with these goals").

> In *Intel*, the Supreme Court set forth four factors to guide a district court's discretion:
>
> (1)    whether "the person from whom discovery is sought is a participant in the foreign proceeding;"
>
> (2)    "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance;"
>
> (3)    "whether the § 1782(a) request conceals an attempt to circumvent foreign proof gathering restrictions or other policies of a foreign country or the United States;" and
>
> (4)    whether the request is "unduly intrusive or burdensome."

*Intel*, 542 U.S. at 264-65.  These discretionary factors weigh strongly in favor of granting § 1782 application here.

### 1.    The Subjects of Discovery Do Not Participate in Foreign Proceedings

As the Supreme Court explained in *Intel*, the need for assistance under Section 1782 is not as apparent when the foreign tribunal has jurisdiction over the persons from whom discovery is sought and "can itself order them to produce evidence."  *Intel*, 542 U.S. at 264.  "The need for §1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought for a nonparticipant in the matter arising abroad." *Id.*; *see also In re Furstenberg Fin. SAS,* No. 18-MC-44 (JGK), 2018 WL 3392882, at *6 (S.D.N.Y. July 12, 2018) ("the Banks from whom discovery is sought are not parties to the contemplated foreign proceeding") (citing *In re O'Keeffe*, 650 Fed. App'x 83, 85 (2d Cir. 2016) (finding first discretionary factor weighed in favor of denying motion to quash subpoena because target was not a party to foreign proceeding)).

In this case, all witnesses, with the exception of Vlad Mishin, are not parties to the foreign proceedings.  While Vlad Mishin is a party to some of the Russian proceedings, that is

not determinative because (i) he did not appear in any cases filed against him in Russia; (ii) he

fled Russia and is, therefore, outside of reach of the foreign tribunal.  Under such circumstances,

*Intel* does not preclude Section 1782 discovery of parties in the underlying international

proceeding.  *See In re Application of Auto-Guadeloupe Investissement S.A., for an Order to Take*

*Discovery Pursuant to 28 U.S.C. Section 1782*, No. 12 MC 221 RPP, 2012 WL 4841945, at *5

(S.D.N.Y. Oct. 10, 2012) ("This Court is not persuaded that *Intel* precludes § 1782 discovery of

parties participating in the underlying international proceeding. Section 1782 aid is not

foreclosed just because the need for such aid may not be as readily apparent … in this case, it is

not clear the Pointe–a–Pitre Court could order [Respondent] to produce the documents that

[Applicant] is seeking.").[9]

Therefore, the first *Intel* discretionary factor favors Applicants.

### 2.    Applicants' Request for Relief Is Consistent with the Character and Nature of Foreign Proceedings and Russian Courts Are Receptive to U.S. Discovery

*Intel*'s second discretionary factor considers whether the request for relief is consistent

with the character and nature of the foreign proceedings and the foreign court is receptive to

judicial assistance from the United States.[10]  *Intel,* 542 U.S. at 244.  The principal concern when

---

[9] *See also In re Servicio Pan Americano de Proteccion*, 354 F.Supp.2d 269, 274 (S.D.N.Y. 2004) (granting a Section 1782 application to take discovery of a party participating in the foreign proceeding because "the apparent limitations of [the foreign court's] discovery rules suggest[ed] that the exercise of jurisdiction by this Court m[ight] be necessary to provide [the party] with the documents it seeks").

[10] The second *Intel* factor examines whether the foreign tribunal "is willing to consider the information sought." *In re MTS Bank*, No. 17-21545-MC, 2017 WL 3155362, at *6 (S.D. Fla. July 25, 2017) (internal citations omitted). Another nation's limit on discovery "within its domain for reasons peculiar to its own legal practices, culture, or traditions … do[es] not necessarily signal objection to aid from United States federal courts." *Intel*, 542 U.S. at 261 (*citing In re Bayer AG*, 146 F.3d 188, 194 (3d Cir. 1998) ("[T]here is no reason to assume that because a country has not adopted a particular discovery procedure, it would take offense at its use.")).  Instead, courts look for "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of § 1782." *In re Kreke Immobilien KG*, 2013 WL 5966916, at *5

considering this factor is whether there is authoritative evidence that "the foreign tribunals would be 'offended' by our judicial aid." *In re Minatec Fin*. S.A.R.L., 2008 WL 3884374, at *7 (N.D.N.Y. Aug. 18, 2008). In evaluating this factor, courts only consider "authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." *Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1099-100 (2d Cir. 1995) (rejecting conclusion that discovery request would offend French sovereignty where no authoritative declarations appeared in the record).

The nature of the Russian proceedings is consistent with the relief sought by Applicants and is similar to the proceedings in the United States. AN ¶¶9-29. Moreover, "it is well established that Russian courts are receptive to discovery requests in section 1782 cases." *In re MTS Bank*, No. 17-21545-MC, 2018 WL 3145806, at *6 (S.D. Fla. June 27, 2018). *See also In re Imanagement Servs., Ltd*., 2005 WL 1959702, at *4 (E.D.N.Y. Aug. 16, 2005) ("There is no indication, let alone any authoritative proof, that the Russian court would reject as evidence any documents gathered with the aid of the witnesses' deposition testimony, nor that it would reject such testimony if offered in support of a request by [applicant] for a Russian court order for the production of particular documents or other evidence.").

The second *Intel* discretionary factor thus also favors granting this Application.

### 3.    This Application Is Not an Attempt to Circumvent Foreign Proof Gathering Restrictions or Other Policies

In making their Application, Applicants do not attempt to circumvent foreign proof-gathering limits or other policies of a foreign country or the United States. There are no rules

---

(S.D.N.Y. Nov. 8, 2013) (*quoting Euromepa S.A. v. R. Esmerian, Inc*., 51 F.3d 1095, 1100 (2d Cir. 1995)). "Such proof, as embodied in a forum country's judicial, executive, or legislative declarations that specifically address the use of evidence gathered under foreign procedures … provide helpful and appropriate guidance to a district court in the exercise of its discretion." *Euromepa*, 51 F.3d at 1100 (footnotes omitted).

limiting discovery in the pending Russian cases.  AN Decl. ¶17.  Furthermore, "[s]eeking more discovery than Russian discovery procedures allow does not circumvent Russian law." *In re: Application of Joint Stock Co. Raiffeinsenbank,* No. 16-MC-80203-MEJ, 2016 WL 6474224, at *6 (N.D. Cal. Nov. 2, 2016) *6-7 (permitting discovery requests for information on "assets, intragroup and external transfers of funds, and the circumstances surrounding the default").

United States policy favors Section 1782 discovery to uncover fraud. *See, e.g., In re Application of Chevron Corp.,* 709 F. Supp. 2d 283, 310 (S.D.N.Y. May 20, 2010) (discovery of evidence of fraud would serve "public interests in justice, fair play, and full disclosure").  The evidence of the close business relationship between the Mishin brothers, the timing of the embezzlement, the traveling of known associates of Vlad Mishin to New York, his U.S. immigration plans, and the sudden rise of New York businesses, justify discovery on whether the stolen funds were reinvested in the United States.  Assisting private litigants in tracing the funds stolen and transferred from Russia through shell companies and organized criminal activity is consistent with the United States policy of combatting fraud and international money laundering.

The third *Intel* discretionary factor also favors granting this Application.

### 4.      The Discovery Requests Are Not Unduly Intrusive or Burdensome

Federal courts have routinely allowed discovery of comprehensive records of financial transactions in Section 1782 actions.  *See, e.g., In re Clerici*, 481 F.3d 1324, 1332 (11th Cir. 2007) (authorizing discovery of Respondent's "properties, rights, credits, sustenance means, and other sources of income from the date of his court-ordered obligation … Such a request is clearly within the range of discovery authorized under § 1782 and comports with the purpose of the statute to provide assistance to foreign tribunals.").  In this case the requested discovery is relevant and narrowly tailored to the issues in the underlying Russian civil and bankruptcy cases,

criminal investigation, and contemplated additional actions.  It is limited to the time period beginning on March 1, 2016 — the date of the first loan issued to Brio by one of the Applicants.[11]  The discovery is tailored to assist in tracing the embezzled funds.  The purpose of the discovery is to identify any assets that belong to the bankruptcy estates and trace the funds from the Applicants' loans that were received by Brio, potentially comingled and obscured with other funds, and redistributed within the network of entities that Vlad Mishin controls directly or indirectly.[12]

Likewise, liberal discovery of bank records has been previously granted in § 1782 cases. *Ahmad Hamad Algosaibi & Bros. Co. v. Standard Chartered Int'l (USA) Ltd.,* 785 F. Supp. 2d 434, 435 (S.D.N.Y. 2011) (allowing broad discovery of bank records from several banks within the district to prove an international Ponzi scheme); *In re Application of MTS Bank*, No. 17-21545-MC, 2017 WL 3276879, at *12-13 (S.D. Fla. Aug. 1, 2017) (permitting a creditor's request for non-party individuals' and companies' bank records for the preceding seven years for use in the bankruptcy proceedings in Russia from several named banks within the district).  In this case information concerning the fraudulent scheme, any potential transfers of stolen funds through New York-based accounts, and potential reinvestment of these funds in the United States are all relevant to Applicants' claims in the Russian civil and bankruptcy cases, criminal

---

[11] The 2016 loan to Brio was made by Vasily Sidorov, the owner of Applicant ARIDA. VS Decl. ¶ 9.

[12] The discovery in this case is similar to the requests that other courts have found relevant in comparable foreign bankruptcy proceedings. *See, e.g.*, *In re Raiffeinsenbank*, at *7 (permitting discovery requests for information on the corporate structure of the debtor, assets potentially subject to recovery, intragroup and external transfers of funds, and the circumstances surrounding the default); s*ee also In re Application of Hill*, 2005 WL 1330769, at *5 (S.D.N.Y. June 3, 2005) (requests for "debtors' accounting practices, cash flow, corporate governance, management integrity and the genuineness of certain transactions" relevant to foreign liquidation proceeding because it allowed requesting party to reconstruct financial transactions and recover assets belonging to the debtor companies).

proceedings, and contemplated additional actions.  In the event any discovery subject raises any concerns of confidentiality or privacy of banking records, those can be adequately addressed by entering a discovery confidentiality order.

Thus, applying the balancing test, all *Intel* discretionary factors weigh heavily in favor of granting the Application.

## C.    No Service of the Application on Interested Parties Is Required

Section 1782 applications are routinely granted *ex parte*.  *In re Gushlak*, No. 11-MC-218 (NGG), 2012 WL 1514824, *3 n.4 (E.D.N.Y. Apr. 30, 2012) ("[C]ourts routinely grant § 1782 applications *ex parte*, limiting respondents' challenges to after the subpoena is served.  Any argument [respondent] could have marshaled in opposition to the application before it was granted also could have been presented in a post-service motion.").  *See further Gushlak v. Gushlak*, 486 Fed.Appx. 215, 217 (2d Cir. 2012) ("It is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*.") (citing *Brandi-Dohrn*, 673 F.3d at 78).  Service of the application on witnesses/discovery subjects is not required because objections can be brought after the subpoenas are served.  *In re Gushlak,* 2012 WL 1514824, *3.  The response to the subpoenas can include, *inter alia*, a motion to vacate the order, to limit the discovery, or to seek an appropriate protective order.  *Ibid.*

## CONCLUSION

As detailed above, the instant Application meets the statutory requirements of 28 U.S.C. § 1782, and the discretionary factors set forth by the U.S. Supreme Court in *Intel* weigh heavily in favor of granting the Application.

For these reasons, Applicants respectfully request that the Court grant their Application for an Order to conduct discovery pursuant to 28 U.S.C. § 1782.


Dated: November 13, 2019

Respectfully Submitted,

/s/ Anna V. Brown
Anna V. Brown, Esq.
Licensed in NJ & PA
Application pro hac vice pending

/s/ Timur Zubaydullin
Timur Zubaydullin, Esq.
Licensed in NY & MA

BROWN LEGAL CONSULTING, LLC
1076 Ocean Avenue
Sea Bright, NJ 07760
Tel. (856) 357-4651
Fax. (856) 219-2038
anna@brownlegalconsulting.com

Attorneys for Applicants