UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

IN RE APPLICATION OF ARIDA, LLC, EARL
MANAGEMENT LTD., FINERGOINVEST, LLC
and ALEXY GRACHEV

19-mc-522 (PKC)

OPINION AND ORDER

-------------------------------------------------------------x

CASTEL, U.S.D.J.

   This Court granted an <u>ex parte</u> application of Arida, LLC ("Arida"), Earl

Management LTD ("Earl"), Finenergoinvest, LLC ("FEI") and Alexey Grachev (collectively,

"Arida" or the "applicants") to take discovery in aid of foreign proceedings in the Russian

Federation.  28 U.S.C. § 1782.  Arida sought the issuance of subpoenas for documents and/or

testimony from Daniel Mishin, June Homes US, Inc., June NY, LLC and June NY 1, LLC

(collectively, the "movants"), among others.[1]

   The movants filed a motion to vacate the Order.  (Docket # 13.)  Extensive

briefing followed, through the filing of the movants' sur-sur reply papers and supplemental

letter-briefs.  Movants argue that Arida has not satisfied the mandatory criteria of section 1782

because the material sought is not "for use" in a foreign proceeding, and, separately, that the

Court should exercise its discretion to deny the application under the four factors set forth by

<u>Intel Corp. v. Advanced Micro Devices, Inc.</u>, 542 U.S. 241, 264-65 (2004).

   For the reasons that will be explained, the Court finds that Arida has satisfied the

mandatory criteria of section 1782 and the discretionary criteria support the issuance of the

---

[1] The application also sought discovery from Vladislav Mishin, Boris Korol and certain U.S.-based financial institutions, none of whom have moved to vacate the Order.

subpoenas, but that certain subpoenas are overbroad, intrusive and unduly burdensome. The motion to vacate the Order will therefore be denied, but the subpoenas will be modified.

BACKGROUND.

The applicants are located in Russia and describe themselves as victims of a "multimillion-dollar Ponzi scheme" orchestrated by Vladislav Mishin. The applicants have been parties to proceedings in Russia against Vladislav Mishin and entities that he owned, including civil lawsuits that resulted in the entry of default judgments in their favor and subsequent creditor claims in bankruptcy proceedings.[2] The applicants' creditor claims in Russian bankruptcy proceedings remain pending. The applicants state that they are contemplating bringing additional fraud-related claims in Russia. (Docket # 2 at 15.)

The applicants assert that Vladislav Mishin fraudulently solicited investors, including the applicants, for the purpose of maintaining a Ponzi scheme. (See, e.g., Grachev Dec. ¶¶ 6-15.) As described by Arida, in Russia, participants in auctions for large procurement contracts are required to deposit funds as a precondition to submitting bids. (1st Navasardyan Dec. ¶ 37.) Vladislav Mishin owned companies named Brio Invest and Microcredit Company Brio Finance, LLC, which held themselves out to investors as intermediary financers of short-term loans to contract bidders. (Id. ¶¶ 30-50.) Brio told investors that their payments would be placed into auction participants' accounts and released after the bidding period, during which time investors would earn high interest with a low risk of loss. (Id. ¶¶ 42-44.)

---

[2] Those proceedings are identified as Bankruptcy of Brio Finance, Case No. A40-141847/2019-184-156, Moscow Commercial Court, Russia; Bankruptcy of Brio Invest, Case No. A40-161382/2019, Moscow Commercial Court, Russia; Bankruptcy of Vladislav Mishin, Case No. A41-49412/2019, Moscow Commercial Court, Russia; Earl Management LTD v. Brio Finance, Case No. A40-51699/19-182-452, Moscow Commercial Court, Russia; Arida v. Brio Finance, Case No. 2-2630/19, Khoroshevsky District Court, Russia; Grachev v. Brio Invest, Case No. 02-1896/2019, Khoroshevsky District Court, Russia; Finenergoinvest, LLC v. Brio Finance, Case No. 2-2710/19, Khoroshevsky District Court, Russia; and Russian Federation v. Vladislav Mishin, Moscow Regional Department of the Ministry of Internal Affairs Criminal Case No. 119014225000156.

According to Arida, Vladislav Mishin and the Brio entities accepted investors'
payments solely in order to pay interest on existing loans, and did not, in fact, provide financing
to auction participants.  (Id. ¶¶ 45-47.)  The applicants assert that they invested in Brio from
2016 through 2018 and were victims of the purported fraud.  They assert that Vladislav Mishin
went into hiding over the New Year's holidays of 2019, after having stolen approximately $6
million.  (Docket # 2 at 8.)

The subpoenas sought in Arida's application are directed to documents and
deposition testimony from Vladislav Mishin's brother, Daniel, and from the June Homes entities
that Daniel purportedly owns.  Arida asserts that discovery in the Russian proceedings produced
some evidence that Daniel Mishin has had a business relationship with Vladislav, including
apparent efforts to sell jointly-owned Russian properties at below-market prices.  Based on
public information, Arida also asserts that Daniel Mishin is the founder of the New York-based
June Homes businesses.  (Docket # 2 at 8-9.)  June Homes appears to be in the business of
renting high-end, dorm-type rooms to young professionals in New York City.  (Id.)

Arida relies on a declaration submitted by Arsen Navasardyan, who is an attorney
in Russia, and asserts upon information and belief that Daniel Mishin moved from Russia to the
United States in 2014 or 2015.  (1st Navasardyan Dec. ¶ 51.)  Navasardyan asserts that discovery
in the Russian proceedings shows "significant business ties" between Daniel and Vladislav
Mishin.  (Id. ¶¶ 54-57.)  He asserts that the brothers jointly owned three hostel companies in
Russia; that Daniel searched for a buyer or lessee of real property that was part of Vladislav's
purported Ponzi scheme; and that Daniel communicated with Vladislav about the marketing of
June Homes to Russian investors.  (Id. ¶¶ 54-57.)  Navasardyan states that discovery is "expected

to reveal" money transfers through the accounts of Daniel Mishin and June Homes in connection with Vladislav Mishin.  (Id. ¶ 59.)

Certain of Arida's discovery requests are extremely broad.  For example, they seek "[a]ll banking records" of Daniel Mishin and the two June Homes entities, including records of debit and credit card transactions on Daniel's personal accounts.  (Docket # 3-2 ¶¶ 1-4; # 3-4 ¶ 1; # 3-5 ¶ 1; # 3-6 ¶ 1.)  They also seek the tax returns of Daniel Mishin and the June Homes entities.  (Docket # 3-2 ¶ 18; 3-4 ¶ 9; 3-5 ¶ 9; 3-6 ¶ 9.)

DISCUSSION.

I.        The Mandatory and Discretionary Factors of 28 U.S.C. § 1782.

A district court may, "upon the application of any interested person," order a person within its jurisdiction to "give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal . . . ."  28 U.S.C. § 1782(a).  A section 1782 applicant must satisfy three mandatory factors by demonstrating that "'(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is made by a foreign or international tribunal or any interested person.'"  Mees v. Buiter, 793 F.3d 291, 297 (2d Cir. 2015) (quoting Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 80 (2d Cir. 2012)); accord In re Accent Delight Int'l Ltd., 869 F.3d 121, 128 (2d Cir. 2017).

If the applicant satisfies the mandatory factors, the district court then weighs four discretionary factors listed in Intel, 542 U.S. at 264-65.  "These are: (1) whether 'the person from whom discovery is sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid generally is not as apparent'; (2) 'the nature of the foreign tribunal, the character of

the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance'; (3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States'; and (4) whether the request is 'unduly intrusive or burdensome.'"  Mees, 793 F.3d at 298 (quoting Intel, 542 U.S. at 264-65).

The Court's exercise of discretion "'is not boundless,'" and must be guided by the goals of "'providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts.'"  Mees, 793 F.3d at 297-98 (quoting Schmitz v. Bernstein Liebhard & Lifshitz, LLP, 376 F.3d 79, 84 (2d Cir. 2004)).

II.     The Applicants Have Satisfied the Mandatory Factors of Section 1782.

A.  Standard for Determining whether Materials Are "For Use" in a Foreign Proceeding.

The only mandatory factor in dispute is whether the materials sought by Arida are "for use" in a foreign proceeding.  "The availability of Section 1782 discovery . . . is quite broad and only has broadened through successive amendments over the years."  In re Accent Delight, 869 F.3d at 134.  "[D]iscovery sought pursuant to § 1782 need not be necessary for the party to prevail in the foreign proceeding in order to satisfy the statute's 'for use' requirement.  The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding – not necessarily something without which the applicant could not prevail."  Mees, 793 F.3d at 298.  An applicant satisfies the "for use" requirements when the materials sought "are to be used at some stage of a foreign proceeding that was within reasonable contemplation at the time of the proceedings below."  Id. at 301;

accord In re Accent Delight, 869 F.3d at 132-33 (materials are "for use" if they "tend[ ] to prove" the applicant's fraud claim).

Applicants have a burden to demonstrate "that they are in a position to use the evidence they seek through their § 1782 application" in the ongoing foreign proceeding. Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 120 (2d Cir. 2015); see also Euromepa, S.A. v. R. Esmerian, Inc., 154 F.3d 24, 29 (2d Cir. 1998) (materials cannot be for use when "there [are] no foreign proceedings, within the meaning of the statute, in which the discovery could be used."). To be "for use," an applicant need not demonstrate that the materials sought are ultimately admissible or discoverable in the foreign proceeding. Brandi-Dohrn v. IKB Deutsche Industriebank AG, 673 F.3d 76, 82 (2d Cir. 2012). "[T]he ultimate admissibility of the evidence is determined by the foreign tribunal." Id. "[R]equiring a district court to apply the admissibility laws of the foreign jurisdiction would require interpretation and analysis of foreign law and such '[c]omparisons of that order can be fraught with danger.'" Id. (quoting Intel, 542 U.S. at 263). However, it "may be necessary" for courts to consider the relevance of the materials sought "insofar as it is difficult to conceive how information that is plainly irrelevant to the foreign proceeding could be said to be 'for use' in that proceeding." Certain Funds, 798 F.3d at 120 n.7.

Where materials are sought for use in a future proceeding, the applicant must come forward with "an objective showing that the planned proceedings [are] within reasonable contemplation." Id. at 124. An applicant should "provide the legal theory supporting such a proceeding," "lay out either the content of his claims" or "a sufficiently concrete basis for" liability, and "provide sufficiently reliable indications of the likelihood that proceedings will be instituted within a reasonable time." Mangouras v. Squire Patton Boggs, 980 F.3d 88, 101 (2d

Cir. 2020) (quotation marks omitted).  In weighing whether the planned proceedings are within

reasonable contemplation, "[c]ourts must guard against the specter that parties may use § 1782 to

investigate whether litigation is possible before launching it."  In re Sargeant, 278 F. Supp. 3d

814, 823 (S.D.N.Y. 2017) (Pauley, J.).

> B.  The Applicants Have Demonstrated that They Seek Discovery "For Use" in
> the Pending Russian Bankruptcy Proceedings.

The movants urge that the applicants cannot demonstrate that the materials it

seeks are "for use" in a Russian proceeding because they have "fail[ed] to present a coherent

picture" of the Russian proceedings and how discovery would be used in them.  (Docket # 14 at

7.)  In response, the applicants urge that they are participants in pending legal proceedings and

have the practical ability to introduce evidence in those proceedings.

In deciding whether the discovery sought is for use in a foreign proceeding, courts

look to "(1) whether a foreign proceeding is adjudicative in nature; and (2) when there is actually

a foreign proceeding."  Euromepa, 154 F.3d at 27.  In Euromepa, a French trial court entered a

judgment of approximately $10 million, after which the losing party filed a section 1782

application seeking discovery into the prevailing party's ownership of the disputed property,

explaining that this discovery would be for use in its appeal of the trial court's judgment.  Id. at

25-26.  By the time the Euromepa decision issued, the judgment had been affirmed on appeal,

and the remaining proceedings were limited to the enforcement of judgment in a French

bankruptcy proceeding and a potential motion to a French appellate court to reopen judgment.

Id. at 28.

The Second Circuit concluded that the French bankruptcy proceeding was not

adjudicative in nature because the disputed merits had already been adjudicated and were not to

be revisited.  Id. ("Thus, in the French Bankruptcy Proceeding, nothing is being adjudicated; the

already extant judgment is merely being enforced (to the extent permitted by the assets of the

bankruptcy estate).") Id.  As to the possible motion to reopen judgment, the applicants

themselves acknowledged that such a motion would turn on newly discovered evidence.  Id. at

29.  The Second Circuit concluded that this did not constitute evidence for use in and

adjudicative proceeding because "Section 1782 is designed to provide discovery in aid of foreign

litigation, not to provide discovery to justify the reopening of already completed foreign

litigation."  Id.

       Subsequent to Euromepa, courts in this District have concluded that section 1782

relief may properly be granted to take discovery of assets in order to enforce an existing

judgment, provided that the applicant has adequately identified the proceeding and demonstrated

that the materials sought could be employed to some advantage in the proceeding.  See, e.g., In

re Gorsoan Ltd., 435 F. Supp. 3d 589, 597-99 (S.D.N.Y. 2020) (Abrams, J.) (discovery was "for

use" when it went toward compliance with asset freeze and disclosure order in a Cyprus

proceeding); Union Fenosa Gas, S.A. v. Depository Tr. Co., 2020 WL 2793055, at *3-5

(S.D.N.Y. May 29, 2020) (English post-judgment attachment proceeding brought by judgment

creditor was adjudicatory in nature because the tribunal required an evidentiary showing from

the applicant) (Engelmayer, J.).  Other decisions applying Euromepa have concluded that section

1782 relief should be denied where the applicant seeks asset discovery for the purpose of

collecting or enforcing judgment in a contemplated, yet-to-be commenced proceeding.  See

Jiangsu Steamship Co. v. Success Superior Ltd., 2015 WL 3439220, at *4 (S.D.N.Y. Feb. 5,

2015) (McMahon, J.) (denying section 1782 discovery of assets where proceedings had not yet

commenced and applicant sought to "easily obtain advance security for such a judgment

(assuming that there is a foreign jurisdiction that, like the United States of America, has a pre-

judgment attachment procedure) or enforce whatever judgment it might obtain in the as-yet-to-be-brought London arbitration."); In re MT Baltic Soul Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG, 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015) (Swain, J.) (denying application where petitioners had not commenced enforcement action after obtaining judgment). Subsequent to Euromepa, the Second Circuit has affirmed the use of section 1782 for discovery relevant to a foreign bankruptcy proceeding, where the materials may aid in the reconstruction of financial records and identifying the debtors' assets.  In re Application of Gissin, 649 Fed. App'x 27, 28 (2d Cir. 2016) ("a foreign bankruptcy proceeding is within the intended scope of § 1782.") (summary order; quotation marks omitted); see also Euromepa, 154 F.3d at 28 ("it is clear that a bankruptcy proceeding may, in some instances, be an adjudicatory proceeding within the meaning of the statute . . . .").

Arida has identified several proceedings in Russia in which the applicants are either a party or claim to have an interest in the outcome.  The applicants have obtained a default judgment against the movants in the following civil cases: ARIDA, LLC v. Brio Finance, et al., Case No. 2-2630/19, Grachev v. Brio Invest, et al., Case No. 02-1896/2019, and Finenergoinvest, LLC v. Brio Finance, et al., Case No. 2-2710/19.  (See, e.g., 3rd Navasardyan Dec. at p. 2 n.1.)

The applicants then filed creditor claims in the bankruptcy proceedings of the Brio entities and Vladislav Mishin.  On September 30, 2019, ARIDA filed a creditor claim in Bankruptcy of Brio Finance, Case No. A40-141847/2019-184-156 (Moscow Commercial Court). (1st Navasardyan Dec. ¶ 25 & Ex. 9.)  On June 5, 2019, Alexey Grachev filed a petition for the involuntary bankruptcy of Vladislav Mishin in the Commercial Court of Moscow, Bankruptcy of Vladislav Mishin, Case No. A41-49412/2019 (Moscow Commercial Court).  (1st Navasardyan Dec. ¶ 27 & Ex. 13.)  On July 1, 2019, Alexey Grachev filed a petition for involuntary

bankruptcy against Brio Invest, <u>Bankruptcy of Brio Invest</u>, Case No. A40-161382/2019

(Moscow Commercial Court).  (1st Navasardyan Dec. ¶ 28 & Ex. 14.)  Grachev's claim against

Brio Invest is listed in a registry of creditors' claims in that proceeding.  (<u>Id.</u> ¶ 28.)  On February

1, 2020, Finenergoinvest filed a creditor application in <u>Bankruptcy of Brio Finance</u>, Case No.

A40-141847/2019-184-156 (Moscow Commercial Court).  (2nd Navasardyan Dec. ¶ 11.)

Separately, the Moscow Commercial Court dismissed the complaint in a civil

proceeding brought by Earl Management, <u>Earl Management LTD v. Brio Finance</u>, Case No.

A40-51699/19-182-452.  (2nd Navasardyan Dec. ¶ 12.)  Earl Management appealed the

dismissal, and on June 10, 2020, its "cassation appeal was rejected" by the Arbitrazh Court of the

Moscow Circuit.  (3d Nikitenko Dec. ¶ 6.)

A separate criminal case is being pursued by the Moscow Regional Department of

the Ministry of Internal Affairs, <u>Russian Federation v. Vladislav Mishin</u>, Case No.

119014225000156, and is in its investigative stage.  (2nd Navasardyan Dec. ¶ 13.)  Arida states

that Vladislav Mishin's whereabouts remain unknown.  (<u>Id.</u>)

Thus, applicants maintain that the discovery is sought "for use" in the three

Russian bankruptcy proceedings in which they are creditors, and a criminal investigation of

Vladislav Mishin.

Russian bankruptcy proceedings are administered by Russian commercial courts

known as "arbitrazh courts."  (1st Navasardyan Dec. ¶ 16 & n.6.)  A creditor may initiate an

involuntary bankruptcy proceeding, and bankruptcy proceedings may take place if the debtor's

whereabouts are unknown.  (<u>Id.</u> ¶ 19.)  The arbitrazh court appoints a trustee or manager to

administer the debtor's estate, with the goal of maximizing the value of the debtor's assets and

their distribution among the creditors.  (<u>Id.</u> ¶ 20.)

Arida has submitted declarations from the court-appointed bankruptcy managers in the bankruptcy proceedings involving Vladislav Mishin, Brio Invest and Brio Finance. (Docket # 52-1, 2, 3.)  Each declarant states that they were appointed by the Moscow court overseeing the underlying bankruptcy proceeding.  (Egorin Dec. ¶ 3; Sytdykov Dec. ¶ 3; Bikmetova Dec. ¶ 3.)  Each states that he or she has access to all documents filed in their respective case and that they "fully support" the applicants' discovery request.  (Egorin Dec. ¶ 6; Sytdykov Dec. ¶ 6; Bikmetova Dec. ¶ 6.)  Each similarly states that he or she has reviewed a certified translation of the applicants' subpoenas, and that the materials sought are relevant and will be accepted in the bankruptcy proceeding.  (Egorin Dec. ¶¶ 7-8; Sytdykov Dec. ¶¶ 7, 9; Bikmetova Dec. ¶¶ 7-8.)  In the case of the Brio Finance proceeding, the bankruptcy manager states that Brio Finance is not participating in the proceeding and has provided no information or documents concerning its property or assets.  (Sytdykov Dec. ¶ 8.)  The applicants also note that under Article 41 of the Code of Arbitration Procedure of the Russian Federation,[3] participants in a bankruptcy proceeding "are entitled . . . to present evidence and to access the evidence presented by other persons participating in the case prior to the beginning of the judicial proceeding . . . ."  (2nd Navasardyan Dec. ¶ 18 & Ex. 5.)

The Court concludes that the applicants have adequately demonstrated that the discovery they seek is "for use" in the bankruptcy proceedings of Vladislav Mishin, Brio Finance and Brio Invest.  The court-appointed bankruptcy managers all state that the information sought is relevant and would be accepted in the proceedings.  This is sufficient to demonstrate that the discovery sought is "for use."  See, e.g., In re Noguer, 2019 WL 1034190, at *3 (S.D.N.Y. Mar. 5, 2019) ("the 'for use' requirement requires a Section 1782 applicant to show that the foreign

---

[3] Under Russian law, the term "Arbitration" is used in reference to commercial courts, and not to the alternative-dispute mechanisms associated with the term under U.S. law.  (2nd Navasardyan Dec. ¶ 14 n.2.)

tribunal at issue will 'take and hear new evidence' in at least some respect . . . .") (Furman, J.)

(citing Euromepa, 154 F.3d at 29).  Because the Court concludes that discovery would be "for

use" in the bankruptcy proceedings, it need not address the parties' arguments concerning the

ongoing criminal investigation in Russia.

          C.  Arida Has Demonstrated that Discovery of the Movants Is Not "Plainly
             Irrelevant."

       The movants also assert that the materials are not "for use" because Arida has

failed to demonstrate that they have materials or information relevant to the Russian proceedings.

Movants note that the conduct of June Homes is not at issue in the Russian proceedings, and that

the categories of information sought by Arida are not limited to the improper transfer of funds by

Vladislav Mishin or the Brio entities.  (Docket # 36 at 4.)  As noted, it "may be necessary" for

courts to weigh relevance as part of the "for use" analysis if the information sought is "plainly

irrelevant" to the foreign proceeding.  Certain Funds, 798 F.3d at 120 n.7.

       Arida has made some showing that Daniel Mishin may possess relevant

information or materials about Vladislav Mishin and the Brio entities, based on the following e-

mails:

- An e-mail from Daniel Mishin to Vladislav Mishin is dated November 27, 2018, with the subject line, "the list of Russians with whom I spoke when I was raising."  (1st Navasardyan Dec. Ex. 18.)  The body of the e-mail states, "Here is the list of Russians with whom I spoke when I was raising," followed by a series of redacted names.  (Id.)

- A second e-mail from Daniel Mishin is also dated November 27, 2018, and was sent to Vladislav Mishin and a person named Stanislav, with the subject line, "Cherepnanovykh drive, 1875 sq.m."  (1st Navasardyan Dec. Ex. 19.)  It states in relevant part, "Hello, Stanislav, Thank you for your interest in this.  As I told you over the phone this property was given to us . . . .  We are considering either selling it quickly with a good discount, or leasing it as a long-term rent for a dormitory.  I will be grateful if you return to me on this and introduce me to someone who may be interested, copied in this message in [sic] my brother Vladislav who owns Brio Finance."  (Id.)

- In a third e-mail of November 27, 2018, Daniel Mishin introduces his brother Vladislav to a person named Elena and identifies Vladislav as the founder of Brio Finance.  (1st Navasardyan Dec. Ex. 20.)  It says in part, "Vlad, Elena is helping to bring investments to the company and we discussed joint investment in Residenz, Elena has a great network and it is very positive and nice to work with her.  Please forward info on opportunity."  (Id.)

- In an e-mail of December 10, 2018, Daniel Mishin writes to Vladislav Mishin and a recipient whose name is redacted, with the subject line, "Hostel, 1 minute from Likhobory metro station."  (1st Navasardyan Dec. Ex. 21.)  The e-mail greets the redacted recipient and states in part: "As I told you over the phone as repayment of a debt we were given a building at below market price located within 1 minute from Likhobory metro station, it is ideal for a hostel or dormitory.  . . .  Its market value is about 90 million, we are giving it away for 70 million +/- if it is purchased or for a long-term lease for a steady tenant for an adequate price.  . . . If I were in Russia, I would start a hostel there myself, but for my brother (copied in this message) it is not a core business, that is why we are looking for a right partner for lease or sale."  (Id.)

These communications indicate that, in late 2018, Daniel Mishin worked with Vladislav to sell Russian real-estate holdings at what were purported to be below-market prices. The e-mails are some evidence that Daniel and Vladislav Mishin had business dealings together in 2018, as demonstrated by Daniel's e-mail to "Stanislav" referring a property as being "given to us" and the second e-mail stating that "we were given a building" "as repayment of a debt . . . ." (emphasis added.)  It further appears that Daniel Mishin facilitated introductions to his brother for prospective business relationships, and that he coordinated with him to identify prospective investors for some type of business.

Further, while June Homes is not referenced in these communications, its business of renting dormitory-type rooms appears similar to Daniel Mishin's dealings with his brother, which included the proposed sale or lease of a building in Russia for dormitory-type facilities.

These communications indicate that the movants may be in possession of evidence concerning the transfer and location of assets belonging Vladislav Mishin and the Brio entities.  Any such information would be relevant to the administration of the bankruptcy proceedings and identifying property in the debtors' estates.  Arida has therefore adequately demonstrated that discovery of Daniel Mishin and June Homes would not be "plainly irrelevant" to the Russian proceedings.

### D.  The Movants' "Fishing Expedition" Argument Is without Merit.

The movants also urge that Arida does not actually seek discovery for use in the Russian proceedings, and will instead use any evidence obtained through the subpoenas to commence new proceedings against Daniel Mishin and June Homes.

In its application, Arida states that, in addition to seeking discovery for use in the Russian proceedings, "the evidence is also sought for use in contemplated actions in Russia and other foreign jurisdictions for fraud, civil money laundering, conversion and other claims by Applicants against Vlad Mishin and Brio and their employees and co-conspirators."  (Docket # 2 at 15.)  Based on Arida's statements about contemplated litigation, the movants characterize the application as "subterfuge," "bad faith" and "abuse."  (Docket # 14 at 14.)  The movants also point to comments purportedly made by Vasily Sidorov, the sole shareholder of Arida and a "prominent businessman in Moscow" who, at a birthday party, expressed a desire to pursue litigation against June Homes in the United States, and separately sent social media messages to Daniel Mishin that accused him of collaborating with his brother.  (Docket # 20-22.)

In considering both the mandatory and discretionary factors, courts have denied section 1782 applications when the discovery sought is a "fishing expedition" for anticipated use in "nonexistent, purely hypothetical proceedings . . . ."  In re Harbour Victoria Inv. Holdings Ltd.

Section 1782 Petitions, 2015 WL 4040420, at *8 (S.D.N.Y. June 29, 2015) (Nathan, J.); see also

In re Certain Funds, Accounts, &/or Inv. Vehicles Managed by Affiliates of Fortress Inv. Grp.

LLC, 2014 WL 3404955, at *6 (S.D.N.Y. July 9, 2014) (denying application where the

applicants had not commenced foreign proceedings and appeared to seek materials in order to

"investigate whether litigation is possible in the first place, putting the cart before the horse.")

(Buchwald, J.); In re Sargeant, 278 F. Supp. 3d at 823 (denying application as premature where

no foreign proceedings were underway and the application was "bereft of even the broadest

contours of what the possible proceeding(s) . . . may entail . . . .").

   If there is an identifiable and avoidable risk that evidence sought in a section 1782

application may be used for improper purposes, a district court may enter a protective order to

limit its use.  Accent Delight, 869 F.3d at 135 ("Section 1782 does not prevent an applicant who

lawfully has obtained discovery under the statute with respect to one foreign proceeding from

using the discovery elsewhere unless the district court orders otherwise.").  Here, the movants do

not seek a protective order, and instead seem to assert that no protective order would be

sufficient to safeguard their privacy interests.  (See, e.g., Docket # 14 at 18; Docket # 36 at 9

("no confidentiality order from this Court would suitably protect June Homes's confidential

information.").)[4]

   The Court concludes that the movants have not demonstrated that the application

is a bad-faith "fishing expedition."  The applicants obtained favorable judgments in civil

proceedings against the movants and currently have creditor claims pending in the Moscow

---

[4] The movants also state: "There is a significant risk that this commercially sensitive and private personal information will be disclosed to the public because the Russian justice system lacks procedures to protect the confidentiality of sensitive information. Russian courts, for example, do not employ protective orders.  . . .  In addition, a protective order would be insufficient to prevent prejudice to June Homes in defending domestic litigation."  (Docket # 14 at 18.)

bankruptcy proceedings.  This distinguishes their circumstances from those where applicants

failed to demonstrate that litigation was within reasonable contemplation or could be useful in a

pending proceeding.

The Court concludes that the movants' assertion that Arida's application is

brought in bad faith as part of a fishing expedition does not weigh against the application, on

either the mandatory or discretionary factors.

### III. Arida Has Satisfied the Discretionary Factors of Section 1782, but Its Requests Will Be Modified.

#### A. The Movants Are Not Participants in the Russian Proceedings.

The first Intel factor considers "whether 'the person from whom discovery is

sought is a participant in the foreign proceeding,' in which case 'the need for § 1782(a) aid

generally is not as apparent' . . . ."  Mees, 793 F.3d at 298 (quoting Intel, 542 U.S. at 264).

David Mishin and June Homes are not participants in the Russian proceedings.

This factor weighs in favor of Arida.

#### B. The Nature and Character of the Russian Proceedings.

The second Intel factor considers "'the nature of the foreign tribunal, the character

of the proceedings underway abroad, and the receptivity of the foreign government or the court

or agency abroad to U.S. federal-court judicial assistance' . . . ."  Mees, 793 F.3d at 298 (quoting

Intel, 542 U.S. at 264).

The movants urge that Russian courts would not be receptive to the categories of

evidence that the applicants seek, and that the applicants are attempting to circumvent Russia's

discovery limitations.  These arguments are more appropriately considered on the third

discretionary factor, and do not go toward the character of the proceedings or Russia's

receptivity to discovery procured in the United States.  The consensus view among U.S. courts is

that Russian tribunals are generally receptive to discovery obtained through section 1782.  See, e.g., Deposit Ins. Agency v. Leontiev, 2018 WL 3536083, at *4 (S.D.N.Y. July 23, 2018) ("Indeed, courts have continued to enforce subpoenas pursuant to § 1782 intended for use in Russian courts.") (Netburn, M.J.) (collecting cases).  Moreover, as noted, the court-appointed bankruptcy managers in the Russian bankruptcy proceedings have submitted declarations in support of the application.

The factor weighs in favor of Arida.

C.   Whether the Request Circumvents Russian Discovery Restrictions.

The third Intel factor weighs "(3) 'whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States' . . . ."  Mees, 793 F.3d at 298 (quoting Intel, 542 U.S. at 264-65).

In reviewing this factor, "there is a difference between a § 1782(a) request that seeks documents that cannot be obtained in a foreign proceeding because the foreign jurisdiction does not provide a mechanism for such discovery, and one that seeks documents that cannot be obtained because the foreign jurisdiction prohibits the discovery of those documents."  In re Accent Delight Int'l Ltd., 791 F. App'x 247, 251 (2d Cir. 2019) (summary order; emphasis in original).  The factor weighs against the application only if permitting discovery would violate "the clearly established procedures of a foreign tribunal," as set forth in "authoritative proof . . . as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures . . . ."  Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099-1100 (2d Cir. 1995) (Euromepa I) (emphasis in original; quotation marks omitted).  The Second Circuit has observed that "[f]ew if any foreign jurisdictions permit the scope of discovery available in [U.S.] courts," and that "'[i]f district

- 17 -

courts were free to refuse discovery based upon its unavailability in a foreign court . . . § 1782 would be irrelevant to much international litigation, frustrating its underlying purposes." Mees, 793 F.3d at 302 (quoting Metallgesellschaft AG v. Hodapp, 121 F.3d 77, 80 (2d Cir. 1997)).

The movants have not identified authoritative statements from a Russian authority that Arida's requests are prohibited under Russian law.  The third Intel factor therefore weighs in favor of Arida.

### 1.   Bank Secrecy Laws.

The movants have submitted three declarations from Denis Yurievich Nikitenko, an attorney who has practiced law in the Russian Federation since 2002.  (Docket # 15, 39, 57.) Nikitenko states that Russian statutes require banks to guarantee the secrecy of accounts and client information, and that such information is inaccessible based on the requests of private litigants.  (1st Nikitenko Dec. ¶¶ 15-19.)  However, Russian litigants may obtain such records in discovery if they obtain the approval of a Russian judge.  (Id. ¶ 18.)

In opposition, Arida has submitted a supplemental declaration of Navasardyan. (Docket # 25.)  He states that Russian bank secrecy laws apply only to financial institutions located in Russia and that the present application is directed to persons and institutions located in the United States.  (2nd Navasardyan Dec. ¶¶ 51-58.)

The movants' reply papers do not revisit the issue of Russia's bank secrecy laws. Moreover, the movants do not identify which specific aspects of Arida's subpoenas run afoul of Russia's laws governing bank secrecy, nor do they point to any definitive statement from Russian authorities that bank secrecy laws would forbid Arida's application.

Russia's bank secrecy laws therefore do not weigh against Arida's application.

2.  The Familial Privilege Codified in Article 51 of the Russian Constitution Is <u>not an Impediment to the Section 1782 Application.</u>

Much of the parties' submissions go toward a provision of the Russian constitution that establishes a safeguard against compelling a person to testify against one's family members.  Article 51 of the Russian constitution states: "No one shall be obligated to testify against oneself, one's spouse and close relatives the circle of which is determined by federal law."  (Kleymenov Dec. ¶ 31.)  There appears to be no dispute that this privilege would generally apply to certain testimony about one's siblings.

The parties have submitted numerous expert declarations about the boundaries and applicability of Article 51, including whether Daniel Mishin may make a "blanket" invocation of its protections and whether the privilege applies to documents.  The movants rely on a declaration from Anatoly Kleymenov, a Russian lawyer with a Ph.D in jurisprudence, as well as the declaration of Nikitenko.  (Docket # 15, 43.)  According to the movants, Article 51 shields Daniel Mishin from Arida's subpoenas, and permitting discovery under section 1782 would violate the safeguards established by the Russian constitution.  Arida relies on declarations from William Partlett, an associate professor of comparative constitutional law at the University of Melbourne in Australia, and from Navasardyan.  (Docket # 24, 25.)  Arida advances a very different understanding of Article 51, urging that the privilege has been construed "narrowly" by Russian courts, and does not provide for "blanket immunity" or extend to documents or business records.  (Partlett Dec. ¶¶ 17-29.)

A section 1782 application should not become "a battle-by-affidavit of international legal experts" and result in a "superficial" ruling on foreign law.  <u>Euromepa I</u>, 51 F.3d at 1099.  The drafters of section 1782 "'definitely did not want to have a request for cooperation turn into an unduly expensive and time-consuming fight about foreign law.  That

would be quite contrary to what they sought to be achieved.'" Id. (quoting Hans Smit, Recent Developments in International Litigation,35 S. Tex. L. J. 215, 235 (1994)).  A section 1782 application circumvents foreign proof-gathering restrictions only when it would violate "the clearly established procedures of a foreign tribunal," as set forth in "authoritative proof . . . as embodied in a forum country's judicial, executive or legislative declarations that specifically address the use of evidence gathered under foreign procedures."  Euromepa I, 51 F.3d at 1099-1100 (emphasis in original; quotation marks omitted); see also id. at 1100 n. 3 (citing example of such a statement issued by the House of Lords in the United Kingdom).

"Absent this type of clear directive, however, a district court's ruling should be informed by section 1782's overarching interest in 'providing equitable and efficacious procedures for the benefit of tribunals and litigants involved in litigation with international aspects.'"  Id. at 1100 (quoting S. Rep. No. 1580, 88th Cong., 2d Sess. (1964), reprinted in 1964 U.S.C.C.A.N. 3782, 3783).  The Second Circuit explained:

> Provided that a district court reasonably attempts to accommodate the evidence-gathering practices of other nations, it need not err on the side of completely withholding discovery assistance from international litigants. After all, a foreign tribunal's corrective response to a well-intentioned but unwelcome grant of discovery could bar the evidence gathered in the given case, and it could also constitute the kind of authoritative declaration mentioned earlier that would provide helpful instruction to American courts in handling future cases. Since section 1782 contemplates international cooperation, and such cooperation presupposes an on-going dialogue between the adjudicative bodies of the world community, such a result would be far from undesirable.

Id. at 1101 (internal citation omitted).

The Second Circuit has warned about the perils of deciding issues of privilege when the authorities cited by the parties are "far from clear."  In re Application for an Order Permitting Metallgesellschaft AG to take Discovery, 121 F.3d 77, 79 (2d Cir. 1997).  "[A]

district court should not refrain from granting the assistance afforded under the Act based simply on allegations" that the materials sought fall within a privilege.  Id. at 80.  If a request appears to be contrary to a foreign jurisdiction's privilege laws, a district court should exercise its discretion to tailor the requests accordingly, rather than deny the application outright.  Id.; see also Mees, 793 F.3d at 303 (foreign restrictions may be a "useful tool" to the district court's exercise of discretion in tailoring discovery).

The parties' expert submissions seek to have this Court rule on the protections of Article 51 based on the summaries and short excerpts of Russian judicial decisions and not authoritative proof or official statements.  Euromepa I, 51 F.3d at 1099-1100.  One authority cited by the movants apparently relates to questioning from authorities at the scene of a traffic accident.  (Kleymenov Dec. Ex. 12.)  Another references protections of "samples of human biological tissues" and "data connected with their traumatic changes."  (Id. Ex. 17.)  The Partlett Declaration quotes sentence fragments of decisions in Russian regional courts, with footnoted citations in the Cyrillic alphabet.  (See, e.g., Partlett Dec. ¶¶ 24-26.)

This is the sort of exercise that the Second Circuit warned against in Euromepa I. Neither party has directed the Court to a "clear directive" from a Russian governmental authority about the application of familial privilege, and particularly its application in foreign discovery proceedings.  The Court is limited in its ability to tailor any requests around the privilege because movants urge that they are entitled to a blanket shield against Arida's requests.  But "a district court should not refrain" from granting a section 1782 application "based simply on allegations" that materials are privileged.  Metallgesellschaft, 121 F.3d at 79.  The movants' broad and absolute reliance on the privilege constrains the Court's ability to tailor the privilege to Arida's requests.

The movants have failed to cite a "clear directive" from a Russian authority as to the application of Article 51, or to tailor the privilege's application in a way that provides the Court with a "useful tool" to exercising its discretion.  See generally Mees, 793 F.3d at 303.  The Court concludes that the privilege does not weigh against the Court's exercise of discretion in granting Arida's application.

3.  Bankruptcy Discovery Limitations.

The movants assert that under Russian bankruptcy law, a neutral receiver must approve and initiate non-party discovery, and that creditors like Arida are unable to seek discovery without judicial intervention.  (1st Nikitenko Dec. ¶¶ 28-33.)  Arida states that it seeks discovery for use in bankruptcy proceedings, including to identify improper transfers of property and to locate undisclosed assets.  (2nd Navasardyan Dec. ¶ 34.)  It urges that Russian bankruptcy law does not preclude creditors from seeking discovery.  (Docket # 23 at 16.)  Further, as has been discussed, the court-appointed bankruptcy managers in the Russian proceedings have submitted declarations stating that they would accept the information sought by Arida.

The Court concludes that the existence of any restrictions against creditors initiating discovery in Russian bankruptcy proceedings does not weigh against the Court's exercise of discretion to grant Arida's section 1782 application.

4.  The Use of U.S. Deposition Testimony in Russian Proceedings.

The movants assert that Russian law does not allow for witnesses to be subject to out-of-court questioning, and that witness testimony in Russia is provided under judicial supervision.  (Nikitenko Dec. ¶¶ 34-36; Third Nikitenko Dec. ¶ 23.)  In response, Arida agrees that in Russia, oral questioning of witnesses is conducted at a hearing in open court, but asserts that Russian courts are receptive to deposition testimony taken in the United States, and that

Russia does not restrict the taking of depositions in the United States.  (Docket # 23 at 17; 2nd Navasardyan Dec. ¶¶ 100-05.)

As Arida points out, courts have concluded that the absence of a deposition-type procedure in Russia does not mean that Russian tribunals would reject evidence obtained in U.S. depositions.  See Deposit Ins. Agency, 2018 WL 3536083, at *9 ("Absent definitive proof that the Russian courts would reject the discovery materials obtained from this proceeding . . . the Court must assume that the Russian courts would accept that evidence."); In re Imanagement Servs., Ltd., 2005 WL 1959702, at *4 (E.D.N.Y. Aug. 16, 2005) ("There is no indication, let alone any authoritative proof, that the Russian court would reject as evidence any documents gathered with the aid of the witnesses' deposition testimony, nor that it would reject such testimony if offered in support of a request . . . for a Russian court order for the production of particular documents or other evidence.") (Block, J.).

Again, the movants have at most demonstrated that United States law provides for a discovery mechanism not available in Russia, as opposed to an authoritative statement that Russia would reject evidence obtained through deposition testimony.  See, e.g., In re Accent Delight, 791 Fed. App'x at 251.  That Russia does not have a procedure for taking deposition testimony does not weigh against the Court's exercise of discretion to grant Arida's section 1782 application.

D.   The Subpoenas Will Be Modified.

The fourth Intel factor weighs "whether the request is 'unduly intrusive or burdensome.'"  Mees, 793 F.3d at 298 (quoting Intel, 542 U.S. at 264-65).  "[A] district court evaluating a § 1782 discovery request should assess whether the discovery sought is overbroad or unduly burdensome by applying the familiar standards of Rule 26 of the Federal Rules of

Civil Procedure." Id. at 302. The text of Rule 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." "[T]o the extent a district court finds that a discovery request is overbroad, before denying the application it should ordinarily consider whether that defect could be cured through a limited grant of discovery." Mees, 793 F.3d at 302.

The subpoenas seek the financial, banking and business records of Daniel Mishin and June Homes, as well as communications and business records relating to Vladislav Mishin, the Brio entities, and certain Russian businesses identified as the "Relevant Entities."[5] Certain of the document subpoenas are unduly broad, intrusive and burdensome, such as the request for "[a]ll banking records" of Daniel Mishin, including all credit and debit card activity on his personal accounts. Each of the subpoenas is modified to exclude from its scope any transaction, transfer, payment, charge, obligation, debit, credit or loan with any person or entity which, in any thirty-day period, totaled less than $5,000. Excepted from this modification is the applicants' subpoena requesting materials related to monetary transactions with June Homes exceeding $10,000. Each of the subpoenas is also modified to exclude tax returns of any person or entity.

CONCLUSION.

The motion to vacate is DENIED, but the applicants' subpoenas are modified, as set forth above. The Clerk is directed to terminate the motion. (Docket # 13.)

---

[5] The "Relevant Entities" are 26 Russian businesses who are identified in the Cyrillic alphabet with their accompanying "Russian company identification numbers." They are described as legal entities in which Vladislav Mishin has some sort of ownership or beneficial interest. (See, e.g., Docket # 3-2, Definition 3.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       December 21, 2020