UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

IN RE APPLICATION OF ARIDA, LLC, EARL
MANAGEMENT LTD., FINENERGOINVEST,
LLC and ALEXY GRACHEV.

19-mc-522 (PKC)

OPINION AND ORDER

-----------------------------------------------------------x

CASTEL, U.S.D.J.

Daniel Mishin moves pursuant to Rule 59(e), Fed. R. Civ. P., to amend the Court's Opinion and Order of December 21, 2020 (the "Opinion," Doc. 65), which denied his application to vacate an Order authorizing discovery for use in a foreign proceeding under 28 U.S.C. § 1782. See In re Arida, LLC, 2020 WL 7496355 (S.D.N.Y. Dec. 21, 2020). The motion will be denied.

Applicants filed a section 1782 application to conduct discovery, and asserted that Vladislav Mishin, through two Russian entities, Brio Invest and Microcredit Company Brio Finance, LLC ("Brio Finance"), ran a Ponzi-type scheme of which the Applicants were purported victims. They asserted that the discovery was for use in, among other proceedings, three pending bankruptcy proceedings in Moscow.

The Court granted the application for issuance of subpoenas directed to Vladislav Mishin, his brother Daniel, June Homes US, Inc. and affiliates ("June Homes"), and other third parties. Daniel Mishin, according to Applicants, was the founder and principal of June Homes. The subpoena directed to him sought documents relating to the source of funding of June Homes and the business affairs of June Homes and other entities, among other documents. Applicants presented evidence that Vladislav Mishin and Daniel Mishin conducted certain joint business activities in Russia.

After the subpoenas issued, Daniel Mishin and June Homes appeared in this matter on December 10, 2019. (Doc. 9.) They moved to vacate the Order authorizing the issuance of the subpoenas. After extensive briefing and submissions, including a sur-reply, sur-sur-reply and multiple declarations of Russian law experts and supplemental submissions at the Court's request, the Court issued the Opinion narrowing the scope of the subpoenas and otherwise upholding the discovery sought.

Daniel Mishin now moves to "amend" this Court's denial of his motion to vacate. He styles his motion as brought under Rule 59(e) governing motions to alter or amend a judgment. The general rule is that "where litigants have once battled for the court's decision, they should neither be required, nor without good reason permitted, to battle for it again." Zdanok v. Glidden Co., 327 F.2d 944, 953 (2d Cir. 1964). Rule 59(e) supports the grant of relief "only when the [movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" Metzler Inv. Gmbh v. Chipotle Mexican Grill, Inc., 970 F.3d 133, 142 (2d Cir. 2020) (citations omitted); see also In re Effecten-Spiegel AG, 2018 WL 3812444, at *4 (S.D.N.Y. Aug. 10, 2018) (Cote, J.), aff'd sub nom. Effecten-Spiegel AG v. Merrill Lynch, 771 Fed. App'x 38 (2d Cir. 2019) (applying Rule 59 to section 1782 application).

The present motion focuses principally on Article 51 of the Russian constitution, which protects a right of person not to incriminate a close family member. This familial privilege was addressed extensively in the Court's Opinion. Arida, 2020 WL 7496355, at *9-11.[1] Daniel Mishin now asserts that the standard for determining foreign proof gathering restrictions in Euromepa S.A. v. R. Esmerian, Inc., 51 F.3d 1095, 1099-1100 (2d Cir. 1995)

---

[1] Mishin's opening brief on his motion to vacate the section 1782 discovery relegated the familial privilege argument to three sentences. (Mishin Opening Mem. at 12; Doc. 14.)

2

(Euromepa I), relied upon by this Court in its Opinion, ought not to apply to section 1782's statutory limitation on the production of privileged materials. 28 U.S.C. § 1782 ("A person may not be compelled to give his testimony or statement or to produce a document or other thing in violation of any legally applicable privilege."). The Court disagrees and concludes that the Circuit's Euromepa I standard indeed applies.

In Euromepa I, the Circuit addressed the "question of the degree to which federal district courts, in deciding whether to order discovery under 28 U.S.C. § 1782(a) in aid of a foreign litigation, should delve into the mysteries of foreign law." 51 F.3d at 1096. The Court cautioned against "a battle-by-affidavit of international legal experts. . . ." Id. at 1099. "[W]e do not read the statute to condone speculative forays into legal territories unfamiliar to federal judges." Id. Instead, a district court "should consider only authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782." Id. at 1100; accord Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P., 798 F.3d 113, 122 (2d Cir. 2015) ("We have warned that district courts should avoid inquiring into foreign evidentiary rules so as to keep the assessment of § 1782 applications from becoming a 'battle-by-affidavit of international legal experts.'") (internal citations omitted; quoting Euromepa I, 51 F. 3d at 1099).

Mishin argues that Euromepa's I's "authoritative proof" standard has no application because he relies upon a privilege, and privileges are protected by the text of section 1782 and not by a mere Intel factor. There is no basis to read Euromepa I in such a limited way. In re Application of Metallgesellschaft AG, 121 F.3d 77, 80 (2d Cir. 1997), addressed whether the district court should have denied an application to conduct section 1782 discovery because the discovery would violate a privilege held by the responding party under German law. In

3

citing the privilege-protecting statutory language, the Court applied Euromepa I's "authoritative proof" standard:

> [A]s is evident from the parties' briefs and oral argument, whether such a privilege exists under German law is far from clear. To require the district court to determine such an issue would involve it in a "speculative foray[ ] into legal territories unfamiliar to federal judges." Such a foray would result in "'an unduly expensive and time-consuming fight about foreign law," undermining the twin aims of the statute. Thus, absent "authoritative proof that a foreign tribunal would reject the evidence obtained with the aid of section 1782," – in this instance presumably because of a violation of the alleged privilege – a district court should not refrain from granting the assistance afforded under the Act based simply on allegations to that effect.

Id. (internal citations omitted; quoting Euromepa, 51 F.3d at 1099-1100.) Mishkin endeavors to distinguish Metallgesellschaft because it was decided prior to Intel, but this does not undermine the application of the authoritative proof standard to a claim of privilege. The Court in Metallgesellschaft was addressing, though not deciding, the issue of privilege under German law in the context of section 1782's statutory prohibition on ordering the production of privileged materials. The Court's statement, holding or not, speaks directly to the circumstances presented in this case. See also Ecuadorian Plaintiffs v. Chevron Corp., 619 F.3d 373, 378 (5th Cir. 2010) ("authoritative proof" standard applied to claim of privilege in the section 1782 context); In re Noguer, 2019 WL 1034190, at *3 (S.D.N.Y. Mar. 5, 2019) (rejecting argument that Euromepa I's "authoritative proof" standard ought not apply to the "for use" statutory factor) (Furman, J.).[2]

To avoid doubt, the Court acknowledges that a court has no discretion under the statute to grant discovery that is otherwise protected by a legally applicable privilege under

---

[2] Judge Furman noted that Euromepa I was premised on the Circuit's reading of the statute: "Crucially, the Second Circuit has derived that principle from the statute itself, citing Section 1782's 'overarching interest in providing equitable and efficacious procedures for the benefit of tribunals and litigants.'" 2019 WL 1034190, at *2 (citations omitted; emphasis in the original).

foreign law.³ The question answered by Euromepa I and its progeny is the type of proof that must be offered to establish the applicability of the privilege.

Notably, Mishin on his Rule 59 motion does not argue that there was authoritative proof or a clear directive as to the application of Article 51 to the type of documents or testimony sought in this case. His argument is that he should not be held to that standard. He argues that the Court should delve deeply into the cited Russian authorities and the expert opinions illuminating those authorities and decide the applicability the application of the privilege to the categories of information sought and, if necessary, to the documents themselves.

None of the Russian law experts on the motion to vacate had reviewed any of the privileged documents. Mishkin and his co-movants relied upon two declarations of Denis Yurievich Nikitenko and a declaration of Antatoly Kleymenov. (Doc. 15, 39, 43.) Beyond the text of Article 51 ("No one shall be obligated to testify against oneself, one's spouse and close relatives the circle of which is determined by federal law.") and authority for the proposition that a sibling is a "close relative," all of their significant contentions were hotly contested and not supported by authoritative proof or a clear directive.

Applicants submitted the declaration of its Russian law expert, William Partlett (Doc. 24), who with citation to authority refers to a court ruling in which an individual was found to have abused Article 51 when she refused to answer questions related to the activities of a legal entity and a second judicial decision in which the Court reportedly held that a "witness has the right to use Article 51 only when answering questions directly affecting his rights and interests" and not on issues "relating to financial and economic activity." (Id. ¶ 24.) He also

---

³ Mishin has shifted from his original position that the Article 51 privilege should be assessed under the third Intel discretionary factor, foreign proof gathering restrictions. (Mishin Opening Mem. at 10-12; Doc. 14.) In his reply brief, he raised for the first time the statutory language. (Reply Mem. at 2-5; Doc. 42.)

5

points out that for oral testimony Article 51 may only be invoked on a question-by-question basis and does not provide a blanket immunity from testifying. (Id. ¶ 26.) In summary, his opinion is that Article 51 "only allows a natural person to refuse to testify on particular questions if his testimony incriminates personally himself or his close relatives." (Id. ¶ 29, 38.) Applicants also submitted two declarations of Arsen Navasardyan, a lawyer qualified to practice law in Russia. (Doc. 25, 53) According to Navasardyan, Article 51 rights "cannot be claimed . . .with respect to any information concerning legal entities, their business operations, financing, company positions, etc."[4] (Mar. 6, 2020 Decl. of Navasardyan at ¶ 66.) His declaration is non-conclusory and well-supported by citation to authority. He acknowledges that the familial privilege could be invoked "to refuse to answer a specific question of [a] personal nature, a truthful answer to which will personally incriminate oneself or one's family members." (Id. at 69.)

The Court adheres to its conclusion that there is no authoritative proof or clear directive that Daniel Mishin's assertion of the familial privilege under Article 51 of the Russian Constitution would protect from disclosure the information sought by the documentary and testimonial subpoenas, as modified.

Finally, the experts have resumed their battle one more time on the Rule 59 motion. Mishin's Kleymenov asserts that Daniel Mishin will not have standing to object to any evidence in a Russian court as violative of Article 51 and Vladimir Mishin, who does have standing, will not succeed on any challenge because the Article 51 privilege belongs to Daniel. (Doc. 70.) In response, Applicants' Navasardyan takes issue with Kleymenov's conclusions and

---

[4] In his motion to vacate, Daniel Mishin argued that the subpoenas were in actuality directed to the affairs of June Homes. (Doc. 14 at 9 ("Given that the subpoenas focus on June Homes's conduct, . . . the transparent purpose . . . is to assess whether to launch a separate legal action against June Homes.").)

6

notes that a Russian Court can exclude evidence on its own motion or at the request of the parties and that there is no bar to a witness petitioning a Russian court on any matter. (Doc. 72.) Kleymenov responds with a reply declaration that asserts that Navasardyan is technically correct that a witness may petition a Russian court but asserts that this is irrelevant because he believes Daniel Mishin would not be viewed as a witness because he gave testimony in a foreign country and will not be testifying in a Russian court. (Doc. 75.) The only irrefutable point is that since December 10, 2019, when Daniel Mishin's lawyer made his first appearance in this Court, there has been no application made to a Russian court and there is no disclaimer by Daniel Mishin of an intent to make an application to a Russian court if he is required by this Court to produce documents or testimony. It is not otherwise necessary to resolve this collateral dispute.[5]

The Court has considered the entirety of Mishin's submissions on his Rule 59 motion and concludes that he has failed to come forward with any material legal authority that represents a change in the law or was overlooked, any clear error, any new evidence that would materially affect the outcome of the motion, or any reason why the Court's Opinion was not in the interests of justice.[6]

In connection with the motion to vacate, the Court has reviewed the documentary and testimonial subpoenas, considered Mishin's argument that they were "unduly intrusive and burdensome" "sweepingly overbroad and abusive" and sought information of a "personal" nature

---

[5] A new expert report or declaration, particularly from one who has previously opined in this proceeding, does not amount to newly discovered evidence. Becnel v. Deutsche Bank AG, 838 F. Supp. 2d 168, 172 (S.D.N.Y. 2011); Walsh v. Chez, 2008 WL 539146, at *3 (N.D. Ill. Feb. 22, 2008).

[6] Mishin derives no benefit from the Circuit's ruling in Mangouras v. Squire Patton Boggs, 980 F.3d 88 (2d Cir. 2020) insofar as it relates to choice-of-law principles. In that case, the Circuit made plain that "in circumstances where the parties dispute which nation's privilege law furnishes the 'legally applicable privilege,' and those competing national laws provide different results, courts should first conduct a choice-of-law analysis to determine which body of privilege law applies." Id. at 98. Mishin never argued that the law of any nation but Russia applies to his assertion of privilege, which law the Court applied without any present objection from Applicants. (Applicants' Rule 59 Opening Mem. at 7-8.)

7

(Doc. 14 at 17-19) and narrowed their scope; the ten topics of testimony in the deposition subpoena do not seek information of a personal nature and all relate the affairs of June Homes and/or the "Relevant Companies." Mishin has served a response to the subpoenas in which he again has made his record of his assertion of the Article 51 privilege and his objection to the subpoenas' scope and breadth. The time has come for Daniel Mishin to comply with the subpoenas which were served on him on or before December 10, 2019.

Daniel Mishin's Rule 59 motion (Doc. 68) is DENIED. Applicants' letter motion (Doc. 76) is DENIED without prejudice.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
June 2, 2021